City of Sharon; Basil C. Scott, Mayor; Thomas S. Bailey; John H. Evans; Everett B. Ogden; Maurice P. Keaveny; Harold E. Bell, Members of the Council of the City of Sharon, Appellants, *v.* Rose of Sharon Lodge No. 3, Fraternal Order of Police, by Gerald E. Saul, President, and Bernard A. Sigler, Secretary, Trustees Ad Litem, and in Their Own Right, Appellees.

278

Argued November 8, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John J. Regule,* City Solicitor, for appellants.

*Francis J. Fornell,* for appellees.

OPINION BY JUDGE WILKINSON, December 20, 1973:

On March 24, 1971, the City of Sharon, a third class city, enacted Ordinance 4-71 which required all present employees of the City Police Department, Fire Department, and Department of Public Works to take and pass a physical examination administered by the city's physician as a "condition for continued employment." The ordinance further provided that refusal to take such examination shall be reason for a ten-day suspension and continued refusal shall be reason for discharge.[1]

Prior to the enactment of Ordinance 4-71, an Arbitration Agreement had been entered into by the parties to this suit, i.e., the City of Sharon and the City of Sharon Fraternal Order of Police. An arbitration award was made, pursuant to the Act of June 24, 1968, P. L. 237, No. 111, 43 P.S. §217.1 *et seq.* (Act 111), concerning a clothing allowance, hospitalization benefits, longevity allowance, and wages. The award also stated that "[a]ll other conditions of work and benefits not in conflict with this award shall continue as presently in force."[2] Appellees, plaintiffs below, as the bargaining unit for the policemen of the city, filed a com-

---

[1] The ordinance also required all *candidates and applicants* for employment in the City Police Department, Fire Department, and Department of Public Works to take and pass a physical examination. This requirement was not challenged in the court below nor is it challenged here.

[2] Although it is not mentioned by either party or by the court below, it might be appropriate to note the language in the arbitration agreement refers to "conditions of work" remaining the same during the term of the agreement, whereas the condition here involved is characterized as a "condition of employment," not as a condition of work.

plaint in equity in Common Pleas Court to enjoin the city and its officials, appellants here, from enforcing Ordinance 4-71 as it applies to policemen of the city. The lower court agreed with the appellees' contention that physical examinations are a matter for collective bargaining under Act 111 and enjoined the city from enforcing Ordinance 4-71. This appeal followed.

The issue involved here was succinctly phrased in the appellees' brief: "May a Third Class City enact an ordinance requiring its policemen to take and pass a complete exam given by a city physician at least once a year as a condition for continued employment in the City in light of [Act 111]?" The lower court found the city had no such right. We disagree and must reverse.

In determining that a physical examination was a term of employment and not a prerogative of management, the lower court relied upon several federal decisions, all of which deal with the private sector of labor relations. As was noted in *Pennsylvania Labor Relations Board v. State College Area School District*, 9 Pa. Commonwealth Ct. 229, 236, 306 A. 2d 404, 409 (1973), federal decisions in the private sector are of little precedent or assistance in construing State statutes dealing with labor relations in the public sector. *See Washington Arbitration Case*, 436 Pa. 168, 177, 259 A. 2d 437, 442 (1969).

Appellant, relying upon a provision of The Third Class City Code, Act of June 23, 1931, P. L. 932, Article XX, as amended, 53 P.S. §37001, that "[c]ouncil shall prescribe all necessary rules and regulations for the organization and government of the police force," argues that it has the express managerial right to enact an ordinance requiring presently employed policemen to take an annual physical examination, and that Act 111 does not supersede the above provision of The Third

Class City Code. We agree with both of these contentions.

There is nothing more fundamental to the interests and safety of the public than the good health and physical fitness of those charged with the responsibility of enforcing the laws. Our Supreme Court in *Geary v. Allegheny County Retirement Board*, 426 Pa. 254, 259, 260, 231 A. 2d 743, 746 (1967), recognized this need when it stated: "As we have just pointed out in Baxter v. Philadelphia, 426 Pa. 240, 231 A. 2d 151 (1967), the duties of and interests protected by police are of a sufficiently distinct character from those of other governmental employees to justify different terms of employment. More specifically, the *special hazards* to which policemen's duties expose them and the *greater physical fitness which policemen need to adequately discharge their duties* lead us to conclude that the Legislature was well within the bounds of reasonable and constitutionally permissible classification in allowing police to become eligible for retirement allowances at an age five years younger than that of other Allegheny County employees." (Emphasis added.) If an earlier retirement for policemen was reasonable and was justified by the need for "greater physical fitness" in *Geary,* an annual physical examination for policemen is reasonable here and is justified by the same need. This need certainly was not eliminated by the enactment of Act 111 in 1968.

Act 111, relied upon by appellees, grants policemen the right to bargain "concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits." The thrust of appellees' argument is that all subjects which are insisted upon as conditions for continued employment are within the purview of Act 111. Physical examinations, however, are "conditions of employment" only in the sense that all job-re-

lated requirements are "conditions of employment." The fact that Ordinance 4-71 refers to the physical examination as a "condition for continued employment" is not controlling and does not make it a condition within the meaning of Act 111.

It would be convenient indeed if the Legislature or the courts could, with some degree of logic, devise a single definition of conditions of employment which could act as a litmus paper to differentiate with reasonable predictable accuracy between conditions of employment and matters of inherent managerial policy. However, as observed by Chief Justice OLIVER WENDELL HOLMES, the life of the law has not been logic; it has been experience. Since collective bargaining in the public sector is new, we have relatively little experience upon which to draw. A Third Class City has the managerial right to provide regulations prohibiting certain on-duty conduct by policemen. *Cf. Kramer v. City of Bethlehem,* 5 Pa. Commonwealth Ct. 139, 289 A. 2d 767 (1972). Judge KRAMER's dissent in *Brenckle v. Shaler Township,* 3 Pa. Commonwealth Ct. 349, 356, 281 A. 2d 920, 924 (1971), accurately observed that "[o]bviously, a municipality may provide regulations whereby it prohibits, for instance, conflicts of interest, or associations with known violators of the law, or conduct unbecoming an officer, etc." In *Brenckle,* outside employment by policemen other than on days off, holidays and vacations was held to be a proper subject of municipal regulation.

All of the above regulations for policemen, traditionally considered within the scope of a municipality's managerial rights, would seem to be essential for the proper and efficient functioning of a police force; yet all are "conditions of employment." Any failure to follow the above regulations would lead to disciplinary measures not unlike those in Ordinance 4-71. The physical fitness of policemen is no less essential for the

efficient functioning of a police force, is also a "condition of employment," and, as with the above requirements, is not meant to be outside the scope of a municipality's managerial rights.

Appellees' reliance upon Act 111 is understandable, but we feel the Legislature, in enacting Act 111, did not intend to deprive Third Class Cities of all of their managerial rights. Significantly, Act 111 refers to the bargainable issues as those "concerning the terms and conditions of their employment, *including compensation, hours, working conditions, retirement, pensions and other benefits.*" (Emphasis added.) These are words of limitation defining, as in *State College Area School District, supra,* a "limited category of issues on which the public employer is required to bargain." In *State College Area School District,* the even broader phrase, "wages, hours and *other* items and conditions of employment" was construed as words of limitation. 9 Pa. Commonwealth Ct. 229, 243, 306 A. 2d 404, 412 (1973).

Reversed.

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. The new requirement under Ordinance 4-71 of the City of Sharon requiring all present employees of that City's Police Department, Fire Department, and Public Works Department to take and pass physical examinations administered by the City's physician as a "condition of continued employment" was conveniently enacted subsequent to the arbitration agreement entered into between the City of Sharon and the City of Sharon Fraternal Order of Police. The Act of June 24, 1968, P. L. 237, Act No. 111 (hereinafter Act 111), 43 P.S. §217.1 et seq., mandates that the municipal employer shall bargain collectively with its police "concerning the terms and conditions of their employment [followed by descriptive rather than restrictive language] including compensation, hours, working

conditions, retirement, pensions, and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act."

The majority draws a fine line of distinction between the language of the arbitration agreement, viz., "conditions of work" and the language of the subject ordinance, viz., "condition of employment." This writer must confess to an inability to draw such a distinction. For even *Webster's Seventh New Collegiate Dictionary* (7th ed. 1970) defines "work" as synonymous with "employment."

The majority also relies upon our prior holdings dealing with the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, Act No. 195 (hereinafter Act 195), 43 P.S. §1101.101 et seq. (*See Pennsylvania Labor Relations Board v. State College Area School District*, 9 Pa. Commonwealth Ct. 229, 306 A. 2d 404 (1973)). Although Act 195 is similar to Act 111, Act 195 is more restrictive in that it specifically exempts public employers from bargaining on matters of inherent managerial policy, which legislative expression is absent from Act 111. The majority also relies upon the Third Class City Code, Act of June 23, 1931, P. L. 932, art. XX, §2001, as amended, 53 P.S. §37001. This reference is inapposite for the reason that Act 111 became law subsequent to the quoted provisions of the Third Class City Code, upon which the majority relies. If the record in this case contained proof by the municipality of the absolute necessity of annual physical examination to enable the municipality to carry out its legislatively mandated functions, or if a physical examination was required of those policemen alleged to be physically unable to perform their duties, I could see some merit to the holding of the majority. The record, however, does not establish such facts or proof. In fact, the police officers of the City of Sharon have not been

required to take annual physical examinations in the past (which would seem to be evidence of a presumption of a lack for such need), and there is no allegation or proof that any of the police officers of the City of Sharon are presently physically unable to perform their duties. A careful review of the record in this case and the applicable law permits me to conclude that the requirements of Ordinance 4-71 are in direct conflict with the bargaining agreement entered into between the City of Sharon and police employees, and furthermore, the requirements of the Ordinance affect "the terms and conditions of their employment" covered by Act 111. Therefore, I would affirm the court below insofar as it applies to police officers presently employed by the City of Sharon. I also agree with the court below that the question of physical examinations as set forth in Ordinance 4-71 should be submitted to collective bargaining under Act 111.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I would affirm on the opinion of President Judge STRANAHAN of the court below.