In the Matter of the INTERNATIONAL ASSOCIATION OF FIRE-FIGHTERS OF THE CITY OF NEWBURGH, LOCAL 589, Petitioner, v ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board of the State of New York, Respondents, and CITY OF NEWBURGH, Intervenor-Respondent.

Third Department, November 17, 1977

### APPEARANCES OF COUNSEL

*Lombardi, Reinhard & Walsh, P. C. (Richard P. Walsh, Jr.,* of counsel), for petitioner.

*Martin L. Barr (Jerome Thier* of counsel), for Public Employment Relations Board, respondent.

*John M. Donoghue* for intervenor-respondent.

### OPINION OF THE COURT

Main, J.

The petitioner herein, International Association of Firefighters of the City of Newburgh, Local 589, is the recognized bargaining agent for the City of Newburgh's firemen. On April 27, 1976, in response to its demand that the city negotiate with it on the issue of rig manning, i.e., for a "minimum number of men that must be on duty at all times per piece of fire fighting equipment", the city filed an improper practice charge with respondent Public Employment Relations Board (PERB). The substance of the charge was that petitioner, by

demanding negotiation of the rig manning issue, had engaged in an improper practice within the meaning of section 209-a (subd 2, par [b]) of the Civil Service Law because rig manning was not a mandatory subject of negotiation. Pursuant to section 204.4 of PERB's rules (4 NYCRR 204.4), the parties presented their arguments directly to PERB without the intermediate step of a report and recommendations from a hearing officer, and following hearings conducted on August 11 and 12, 1976 and the submission of written memoranda, PERB concluded that the rig manning demand was "essentially one of management prerogative as to how best to service public safety" and, therefore, not a mandatory subject of negotiation. On this basis, PERB sustained the improper practice charge by decision dated January 5, 1977, and this proceeding followed.

■ ■ Prefatory to our discussion of the central issue in this proceeding, we would note that, pursuant to the so-called Taylor Law (Civil Service Law, art 14), public employees are clearly entitled to negotiate their terms and conditions of employment with their employers (Civil Service Law, § 204, subd 2), and neither public employers nor public employees can refuse to negotiate in good faith (Civil Service Law, § 209-a, subds 1, 2). Furthermore, PERB has been given broad powers to administer the Taylor Law, and one of its specific duties is the prevention of improper practices, such as a refusal to bargain in good faith (Civil Service Law, § 205, subd 5). With regard to this latter responsibility, it must often, as here, preliminarily determine whether or not an item sought to be negotiated is, in fact, a term and condition of employment and, therefore, mandatorily negotiable (cf. *Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46).

■ ■ In the present instance, PERB has concluded that the City of Newburgh cannot be compelled to negotiate with the bargaining agent for its firemen for a "minimum number of men that must be on duty at all times per piece of fire fighting equipment", and we find that this determination must be confirmed. Even a cursory reading of the demand reveals that it relates to the number of men "on duty" and not to the safety of those men as, for example, would a demand for negotiation for a rule that a fireman was not to enter a burning building alone. As such, petitioner is plainly seeking a voice in determining the number of employees the City of Newburgh will hire for its fire department, and in our view

that determination is clearly a basic policy decision to be made solely by the municipal governing body as to the allocation of its resources and the extent and quality of fire protection to be provided by the city for its citizenry (cf. *Matter of West Irondequoit Teachers Assn. v Helsby, supra).*

■ By so ruling, we do not mean to indicate that effects upon the employees' working conditions arising from the city's original decision as to total manpower are necessarily nonnegotiable. In this regard, although a general safety clause in the collective bargaining agreement providing for a grievance procedure to settle safety problems on an *ad hoc* basis would seem to be most appropriate since such problems would often not be foreseeable, any safety impact upon the firemen arising from a manpower decision would be a proper subject for bargaining between employer and employee. As an example, should a certain number of men be demonstrably necessary to operate a piece of equipment safely, employees could properly insist upon negotiating a rule mandating that the equipment be operated only when sufficient manpower is assigned thereto so that the operation can be carried out in safety (cf. *Matter of Burke v Bowen,* 40 NY2d 264).

■ In sum, therefore, we conclude that the challenged determination is neither arbitrary nor capricious, but rather has a rational basis with substantial evidentiary support in the record therefor (see CPLR 7803; *Matter of West Irondequoit Teachers Assn. v Helsby, supra; Matter of Howard v Wyman,* 28 NY2d 434). Even petitioner, in its brief, concedes that there is no "set magic number of men which must be fixed for all rigs in all cases", and its examples as to possible safety problems are concerned with exigencies which might possibly arise at the scene of a fire. As noted above, provision can be made for adequate safety precautions in those circumstances by negotiating for rules providing that certain specified operations will not be undertaken when adequate manpower is not available. In this way, the firemen will not be needlessly endangered and the municipality will be left with needed flexibility in deciding how it will staff its fire department and what new techniques and equipment it will adopt.

The determination should be confirmed, and the petition dismissed without costs.

HERLIHY, J. (concurring). While I am not in complete agreement with the majority statement, I concur in the following memorandum:

So far as policemen and firemen are concerned, the line of demarcation between the issue of *safety* and *manpower and its deployment* is razor thin. If it is the former, it is a mandatory subject of negotiation, if the latter, it is essentially one of management prerogatives as to how to best serve public safety needs and it is not a mandatory subject of negotiation. Inasmuch as PERB is stating the demand here is not a mandatory subject of negotiation, I would agree. It leaves open, if I correctly understand its decision, the subject of voluntary negotiation by way of agreement or contract.

It is readily understandable why PERB has encountered such difficulty in arriving at its ultimate conclusion because, as noted above, the distinction is almost one of semantics. In fact, it seems to me that its decision said it all when it stated: "Accordingly, while we conclude that a demand in general terms for firefighters' safety is a mandatory subject of negotiation, we determine that the specific demand for a 'minimum number of men that must be on duty at all times per piece of fire fighting equipment' is not [negotiable]."

With these distinctions in mind, I feel that there is a reasonable basis for its decision and would confirm.

KANE, J. P., LARKIN and MIKOLL, JJ., concur with MAIN, J.; HERLIHY, J., concurs in a separate opinion.

Determination confirmed, and petition dismissed, without costs.