◼ In the Matter of CITY OF NEW ROCHELLE, Petitioner, v JOSEPH R. CROWLEY et al., Constituting the Public Employment Relations Board, Respondents, and UNIFORMED FIRE FIGHTERS ASSOCIATION, INC., LOCAL 273, I.A.F.F., Intervenor-Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the Public Employment Relations Board (PERB), dated September 15, 1977, which dismissed petitioner's improper practice charge against the intervenor-respondent union. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. The sole issue raised in this proceeding is whether it was improper for the union to insist that petitioner negotiate a proposal by it as a mandatory item of negotiation. The disputed item provides: "A general Health and Safety Committee should be created consisting of two representatives appointed by the City and two representatives appointed by the Union. The Committee's jurisdiction shall cover all matters of safety to the members of the Fire Department, including but not limited to, the total number of employees reporting to a fire and the minimum number of employees to be assigned to each piece of fire fighting apparatus. The foregoing is intended to be illustrative and not inclusive. Decisions of the Committee shall be made by a majority vote, provided, however, that an equal number of representatives appear at such Committee meetings, which shall be held at least quarterly or on special call of any two of the representatives. In the event of a deadlock between the Union and City representatives, the issue in dispute shall be submitted to binding arbitration." Petitioner contends that to require the negotiation of this proposal would impinge upon its unquestioned power to unilaterally determine the quality and extent of services to be delivered to its constituents. *Questions concerning the number of employees reporting to a fire or the minimum number of employees to be assigned to a piece of equipment involve primarily issues of manpower deployment and, as such, rest solely within the unfettered discretion of the public employer. The union urges that its proposal is concerned with protecting the safety of its members and thus involves a term and condition of employment. PERB determined that the proposal was a proper one and that the union could insist that the matter be negotiated.* We find that PERB's determination was neither arbitrary nor capricious, and is supported by substantial evidence in the record. As has been previously noted, "the line of demarcation between the issue of *safety* and *manpower and its deployment* is razor thin" *(Matter of International Assn. of Firefighters v Helsby*, 59 AD2d 342, concurring opinion of Herlihy, J., p 346 [emphasis in original]). PERB, recognizing the unavoidable hybrid nature of the proposals that inevitably arise under these circumstances, has suggested: "the parties through the negotiating process could create a joint safety policy committee that operates under general guidelines that are recited in the contract to consider issues of safety that relate to manning standards. This process could be made subject to the grievance arbitration procedure. A demand to establish such a joint safety policy committee would be a mandatory subject of negotiations" *(Matter of White Plains Police Benevolent Assn. [City of White Plains]*, 9 PERB 3008, 3011). Mindful of the need to protect management's prerogatives as to manpower deployment, PERB has made it quite clear that the invocation of the magical word "safety" will not always transform a nonmandatory subject of negotiation into one requiring negotiation. As was stated in *International Assn. of Firefighters [City of Newburgh]* (10 PERB 3001, 3003 confirmed *sub nom.*

*Matter of International Assn. of Firefighters v Helsby,* 59 AD2d 342, *supra):* "Hence, the presence of a general safety clause in the collective bargaining agreement should provide a basis for testing the safety guarantee in *individual fact situations* which may arise during the life of the agreement by presentation of disputes in such *specific situations* for resolution through the grievance procedure." (Emphasis supplied.) PERB has thus established an eminently reasonable balance between the conflicting considerations involved. Management is precluded from hiding behind an invincible shield of management prerogative when its employees seek to negotiate the establishment of a committee to consider individual and specific factual situations that encompass safety considerations. A union, on the other hand, may not force management to negotiate general questions of manpower deployment under the guise of safety, and PERB has been diligent in safeguarding management's prerogatives in such situations (see, e.g., *Matter of Troy Uniformed Fire Fighters Assn. [City of Troy]* [Case U-2879, Dec. 8, 1977]). When viewed within this context, the union's proposal was a mandatory subject of negotiation. The union could properly insist that the question of establishing a Health and Safety Committee working within the context of a general safety guideline be negotiated *(Matter of White Plains Police Benevolent Assn. [City of White Plains], supra).* Manpower questions may properly be considered by the committee, and by the arbitrator if they cannot agree, only within the framework of individual and specific factual situations. Neither it nor the arbitrator may consider general minimal manning requirements. The arbitrator, if called upon, may resolve disputes involving a question of safety only in particularized and specific situations. Petitioner raises the spectre of the loss of control of pure managerial questions, but its fear is unfounded. Any attempts to overstep the bounds herein set forth can properly be repulsed at such time as problems arise within the milieu of explicit and concrete situations. We simply hold that, in this instance, PERB had a rational basis for deciding that the thrust of the challenged proposal involved safety rather than job security. Hopkins, J. P., Shapiro, Hawkins and O'Connor, JJ., concur.