International Association of Fire Fighters, Local 669, Appellant *v.* City of Scranton, Appellee.

Argued March 4, 1981, before President Judge CRUMLISH and Judges CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Thomas W. Jennings, Sagot and Jennings,* for appellant.

*John J. Brazil,* City Solicitor, with him *Ralph P. Iori,* for appellee.

Opinion by Judge Williams, Jr., May 26, 1981:

The International Association of Firefighters, Local 669 (Union) appeals to this Court to reverse a decision of the Lackawanna County Court of Common Pleas vacating the award of a Board of Arbitration. The award mandated that the City of Scranton (City) increase its minimum complement of regularly appointed fire fighters to 225 persons.

Pursuant to contract renewal, the Union and the City entered into negotiations which ultimately resolved all major issues except the minimum number of fire fighters on the force. The Union maintains that this is a condition of employment under the collective bargaining agreement, directly related to the safety of the union members. The City holds the position that the size of the force is a decision unique to managerial prerogative, and one which is not susceptible of arbitration as a condition of employment, as that term is used in Section 1 of the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §217.1 (Act 111).[1]

In an opinion consisting primarily of the reproduction of a letter from the then Superintendent of the Scranton Bureau of Fire to the Director of Public Safety, the Board of Arbitration held that "safety rules and staffing practices are important provisions of firefighting." It went on to say that a determination that safety matters are exclusively within the scope of managerial decision-making would denigrate the impact of the federal Occupational Safety and Health Act of 1970 (OSHA)[2] upon working conditions.

---

[1] §217.1 Right to Bargain.

Policemen or firemen employed by a political subdivision of the Commonwealth . . . shall . . . have the right to bargain collectively with their public employers concerning the terms and conditions of their empoyment, including compensation, hours, working conditions, retirement, pensions and other benefits. . . .

[2] 29 U.S.C. §651 *et seq.*

Upon an appeal of that decision by the City, the Common Pleas Court held that matters pertaining to the size of the general manpower complement are outside the parameters of the arbitrators' authority. The Union has appealed that decision to this Court, asking whether the alleged understaffing of the fire department bears a rational relationship to the performance of the fire fighters' duties, which will therefore sustain a determination that the staffing complement is a bargainable issue under Act 111. No appellate court in Pennsylvania has addressed the issue of whether the number of persons on a fire force, as a safety factor, bears a rational relationship to the performance of a fireman's duties, such that it is a bargainable "condition of employment" under Act 111.

In examining the decisions of courts of our sister states, however, we find that the question, as it pertains to other states' statutes governing collective bargaining for fire fighters, has been examined. *See City of New Rochelle v. Crowley*, 403 N.Y.S. 2d 100, 102, 61 A.D.2d 1031, 1032 (1978), in which the court stated that "(a) union . . . may not force management to negotiate general questions of manpower deployment under the guise of safety, and PERB has been diligent in safeguarding management's prerogatives in such situations." In the context of the establishment of a health and safety committee to have jurisdiction over matters including the minimum number of fire fighters assigned to each piece of equipment, and the number to be sent to each fire, the court said that "neither it (the committee) nor the arbitrator may consider *general minimal manning requirements*," (emphasis added) indicating that this is clearly within the scope of managerial discretion.

*See also, International Association of Firefighters of the City of Newburgh v. Helsby*, 399 N.Y.S. 2d 334, 336, 59 A.D.2d 342, 344-45 (1977), in which the court said that

> petitioner is plainly seeking a voice in determining the number of employees the City of Newburgh will hire for its fire department, and in our view that determination is clearly a basic policy decision to be made solely by the municipal governing body as to the allocation of its resources and the extent and quality of fire protection to be afforded by the city for its citizenry.

The opinion further notes that the question of how many fire fighters are necessary from a safety standpoint to handle a particular piece of equipment is negotiable insofar as it impacts on the safety of the firemen.[3]

The bottom line of the instant appeal is whether the court will permit the members of fire and police forces to decide how much of the municipal budget will be spent in the areas of fire and police protection, under the guise of safety considerations. To grant this appeal, and reverse the lower court, we must give the public employees' union the right to have a major decision-making impact on government spending, budgeting, the level of police and fire protection that the municipality must provide, and even taxation, because salaries for the additional employees must come from public funds. To affirm the award of the arbitrator as being within the scope of arbitrable issues, the court must effectively put appellees on an equal footing with their employer on a major policy-making question. These people are, after all, employees, not employers.

The courts that have dealt with this issue have drawn a *very* fine line in distinguishing between the

---

[3] *Compare, Town of Narragansett v. International Association of Fire Fighters, AFL-CIO, Local 1589*, (R.I.), 380 A.2d 521 (1977) in which the court held that a proposal to increase the number of firefighters on duty at a given time at a specific fire station is arbitrable under that state's Fire Fighters' Arbitration Act.

total number of persons on the force (not arbitrable), and the number of persons on duty at a station, or assigned to a piece of equipment, or to be deployed to a fire (all arbitrable because they are rationally related to the safety of the fire fighters). However, this Court finds merit in that distinction, because the result still leaves in the municipality the ultimate decision concerning what level of fire protection it wishes, or can afford, to provide to the citizens. If it finds that the arbitrable situations cause an imbalance in certain areas of the force, it retains the authority to decide whether to hire more employees, close stations, revamp the force, or take some other managerial action. Since the method of resolving the imbalance may have far-reaching political and economic implications, especially if taxes must be raised, it should remain within the purview of those who were elected and/or appointed to make such decisions.

In *Sharon v. Rose of Sharon Lodge, No. 8,* 11 Pa. Commonwealth Ct. 277, 283, 315 A.2d 355, 358 (1973), this Court examined the language of Act 111 referring to bargainable issues, and held that the words "including compensation, hours, working conditions, retirement, pensions and other benefits . . . are words of limitation" on the mandatory bargainable issues. That opinion also noted that Act 111 does not remove all regulation of (in that case) policemen from the scope of a municipality's managerial decision-making, particularly any regulation which might be considered "essential for the proper and efficient functioning of a police force."[4]

So also, here, we find that Act 111 does not remove from the scope of a municipality's managerial decision-making the determination of the total number of fire fighters it deems necessary for the level of fire protection it wishes to afford to its citizens. Although

---

[4] 11 Pa. Commonwealth Ct. at 282, 315 A.2d at 358.

the Court acknowledges that the line between safety and numbers is finer in protective services such as fire and police work than in most other occupations, we nevertheless find that that safety can be adequately protected by more finely honed collective bargaining on specific issues as discussed, *infra*. The safety of a fire fighter is far more rationally related to the number of individuals fighting a fire with him, or operating an important piece of equipment at a fire, than it is to the number of members of the entire force.

The order of the Lackawanna County Court of Common Pleas is hereby affirmed.

ORDER

AND Now, the 26th day of May, 1981, the order of the Lackawanna County Court of Common Pleas in the above-captioned action is hereby affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.