**DELAWARE COUNTY LODGE NO. 27, FRATERNAL ORDER OF POLICE, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1998.

Decided Dec. 30, 1998.

---

S. Stanton Miller, Jr., Media, for petitioner.

Peter Lassi, Harrisburg, for respondent.

Before FLAHERTY, J., LEADBETTER, J., and RODGERS, Senior Judge.

LEADBETTER, Judge.

Delaware County Lodge No. 27, Fraternal Order of Police (FOP) petitions for review of an order and decision of the Pennsylvania Labor Relations Board (PLRB), which concluded that Haverford Township (Township)[1] did not unilaterally alter a term or condition of employment bargainable under Act 111[2] or violate Act 114.[3]

On March 15, 1995, the FOP filed with the PLRB a charge that the Township had engaged in unfair labor practices in contravention of Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act[4] by imposing a

---

1. Haverford Township has intervened in this appeal.

2. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

3. Act of Oct. 30, 1981, P.L. 321, §§ 1–2, 71 P.S. §§ 2001–2002.

4. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1–211.13. Sections 6(1)(a) and (e) provide:

(1) It shall be an unfair labor practice for an employer—
(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

. . .

(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section (a) of this act.
43 P.S. § 211.6(a), (e).

traffic citation issuance performance standard or quota on the bargaining unit, in violation of Act 114,[5] without first fulfilling its bargaining obligations under Act 111.[6] After a hearing, the hearing examiner found that the Township police department comprises thirty-six officers and eight sergeants, thirteen of whom are members of a Special Response Team (SRT).[7] To be chosen and continue as a member of the SRT, an officer must be above average in productivity. To determine an officer's productivity, the Township began tracking his or her police activity by utilizing a weekly activity report that seeks to measure and record an officer's activity in the following categories:

1. arrests made;
2. traffic citations issued;
3. non-traffic citations issued;
4. motor vehicle written warnings issued;
5. parking tickets issued;
6. vehicle stops made;
7. selective assignments completed;
8. bank checks made;
9. pedestrian investigations completed;
10. vacant house checks made;
11. foot beats walked; and
12. incident reports written.

At the end of 1994, Lieutenant Harnish of the department compiled the activity reports of all of the officers and determined the average number of occurrences of each of the above activities. Harnish then produced a summary report that set forth each officer's reported numbers in each category and whether the officer's numbers were below, equal to, or above the average of all the officers. The summary report was provided to the Chief of Police for use in evaluating individual performance, but was not disseminated to the officers. Subsequent evaluations were based in part on the summary report and, during evaluation meetings, some officers were informed that their numbers, including the number of traffic citations that they had issued in the previous year, were below the average of all the officers and that they should increase their productivity. Some officers whose reports reflected below average productivity in some of the categories nonetheless received a good evaluation. In 1995, two officers were removed from the SRT because of low productivity, as indicated by the summary report, and other performance problems, including issues with fellow personnel.

The hearing examiner concluded that the FOP did not establish that the Township imposed a traffic citation quota because: (1) the officers that were removed from the SRT were removed because of their overall low productivity, rather than merely because of their low productivity in the "traffic citations issued" category; (2) at least one of the officers was removed, in part, because of prior personnel problems; (3) some SRT officers that were below average in the number of traffic citations issued remained on the SRT; and (4) the FOP failed to introduce any evidence, beyond the subjective belief of some officers, that performance productivity was based on the total number of traffic citations issued. The hearing examiner therefore dismissed the unfair labor practices charge. The FOP filed exceptions, which the PLRB dismissed.

The FOP then sought review with this court, which affirmed in part and reversed in part. This court concluded that the Township did not implement a traffic citation quota *per se*, but remanded to the PLRB for a determination of (1) whether the Township's

---

5. Section 1 of Act 114 provides, in pertinent part: No political subdivision or agency of the Commonwealth shall have the power or authority to order, mandate, require or in any other manner, directly or indirectly, suggest to any police officer ... that said police officer ... shall issue a certain number of traffic citations, tickets or any other type of citation on any daily, weekly, monthly, quarterly or yearly basis.
71 P.S. § 2001.

6. Section 1 of Act 111 grants police and firefighters the right to bargain collectively with their public employer over the terms and conditions of their employment. 43 P.S. § 217.1.

7. The SRT is a highly trained tactical response team designed for deployment in life threatening or high risk situations such as barricaded persons, hostage taking crises and high risk drug warrant searches.

method of tracking police officer productivity constituted a performance standard that is a statutorily mandated subject of collective bargaining under Act 111 and (2) whether the Township's tracking method violates Act 114. *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Bd.*, 694 A.2d 1142, 1146–47 (Pa.Cmwlth.1997). On remand, the PLRB concluded that the Township's method of tracking the productivity of its police officers did not violate Act 114 and did not constitute a performance standard for which bargaining was mandated under Act 111, because it is a matter of managerial prerogative. This petition for review followed.

In the present appeal, the FOP argues that the Township's tracking method constitutes a performance standard which must be bargained for under Act 111. The FOP also argues that the Township's tracking method implicates Act 114, thereby requiring the Township to bargain the impact of the tracking upon terms or conditions of employment under Act 111.[8]

■ Section 1 of Act 111 states that police or firefighters "have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits." 43 P.S. § 217.1. In construing this language, our courts have concluded that an issue is presumptively bargainable if it bears a rational relationship to an employee's duties. *Township of Upper Saucon v. Pennsylvania Labor Relations Bd.*, 152 Pa. Cmwlth. 530, 620 A.2d 71, 73 (Pa.Cmwlth. 1993). However, where a managerial policy concern substantially outweighs any impact the issue will have on employees, the issue will be deemed a managerial prerogative, rendering the issue nonbargainable. *Id.* at 74; *Frackville Borough Police Dep't v. Pennsylvania Labor Relations Bd.*, 701 A.2d 632, 634 (Pa.Cmwlth.1997) (A subject may be a

managerial prerogative which need not be bargained, even though it may affect employee wages, hours or working conditions.); *City of Sharon v. Rose of Sharon Lodge No. 3*, 11 Pa.Cmwlth. 277, 315 A.2d 355, 358 (Pa. Cmwlth.1973) (Act 111 does not remove all regulation of policemen from the scope of a municipality's managerial decision-making, particularly any regulation which might be considered "essential for the proper and efficient functioning of a police force.").

■ Here, the Township's method of tracking police officer performance bears a rational relationship to the officers' duties. The Board concluded, however, that the Township's managerial policies substantially outweigh any impact the tracking method may have on the officers. We agree.

The Board reasoned that the Township began tracking productivity to further its managerial interests in evaluating, selecting and directing its employees. We conclude that the Board is correct that these interests involve managerial policy and that these interests substantially outweigh the impact of the tracking method on the officers. It is within a Township's prerogative to establish and utilize a method to aid in selecting and directing its personnel and in measuring and evaluating their performance. The ability to formulate policies in these areas is essential for the proper and efficient functioning of a police force. *See City of Sharon.* Further, it is well established that the Board possesses administrative expertise in the area of public employee labor relations and that great deference should be given to the Board's assessment of the often competing concerns between the employer and the union.[9] *City of Philadelphia v. Pennsylvania Labor Relations Bd.*, 138 Pa.Cmwlth. 113, 588 A.2d 67, 71 (Pa.Cmwlth.1991).

Moreover, we have determined that similar types of managerial policies outweigh the

---

8. Based on the issues raised on appeal, our review is limited to a determination of whether the PLRB committed an error of law. *Harbaugh v. Pennsylvania Labor Relations Bd.*, 107 Pa. Cmwlth. 406, 528 A.2d 1024, 1026 (Pa.Cmwlth. 1987). Our review over such an issue is plenary.

9. The PLRB held that even if the tracking method constitutes a performance standard, as the FOP argues, it is not bargainable because performance standards have consistently been held to be matters of managerial prerogative. We cannot conclude that the PLRB erred as a matter of law in this conclusion.

impact of the policy on public employees. In *City of Philadelphia*, we determined that implementation of a first responder program (designating which fire companies would respond in medical emergencies, and when, for the purpose of providing faster and better service to citizens) constituted a managerial prerogative. Similarly, in *City of Sharon*, we found the city's enactment of an ordinance requiring police and fire employees to take and pass a physical examination to be a managerial prerogative. Finally, in *International Ass'n of Fire Fighters, Local 669 v. City of Scranton*, 59 Pa.Cmwlth. 235, 429 A.2d 779 (Pa.Cmwlth.1981), we found the decision regarding the total number of fire fighters on a city's force to be a managerial prerogative. In each of those cases, we determined that while the managerial policies at issue were rationally related to the employees' duties, they nonetheless substantially outweighed the impact of the policy on the officers, and were therefore not bargainable. We reach the same conclusion here.

■ We turn now to the question of whether the Board erred in concluding that the Township's tracking method does not violate Act 114. Act 114 was enacted to protect police officers by prohibiting the imposition of quotas for the issuance of traffic tickets and citations. *South Whitehall Township Police Serv. v. South Whitehall Township*, 521 Pa. 82, 88, 555 A.2d 793, 796 (1989). In our prior decision in this case, we concluded that the Township did not establish a traffic citation issuance quota *per se*, but remanded to the Board for a decision as to whether the tracking method nonetheless violated Act 114. On remand, the Board noted that the employees were not required to perform any of the activities listed on the tracking report at a particular level and that no employee, including either of the two employees who were dismissed from the SRT, was disciplined for failing to issue a certain number of traffic citations. The Board fur-

ther noted that the summary report was not distributed to the officers. The Board also stressed that the record revealed that no employee was required to issue an increased amount of traffic citations or bring their level of citation issuances up to any specified number. Thus, the Board concluded that the Township's use of the tracking method did not violate Act 114. We agree.

■ Act 114 is violated only when a political subdivision orders, requires or suggests that a police officer issue a *certain number* of traffic citations in a given time period. *See* note 4, *supra*. Here, while several of the officers were informed by their superior officer that the number of traffic citations that they had issued in the previous year was below the department average, there is no indication in the record that the issuance of a certain number of citations was ever ordered, required or suggested. Further, the record reveals that the two officers who were dismissed from the SRT were dismissed because their productivity levels in a significant number of the twelve categories, and not just in traffic citation issuances, were lower than their fellow officers' levels. Thus, the PLRB correctly concluded that the Township did not violate Act 114.[10]

Accordingly, we affirm the order of the PLRB.

### ORDER

AND NOW, this 30th day of December, 1998, the order of the Pennsylvania Labor Relations Board in the above captioned matter is hereby affirmed.

---

10. The FOP argues that the effect of the utilization of the tracking method is that the officers are forced to violate Act 114, which gives rise to impact bargaining. Even though an issue is nonbargainable because it is deemed a managerial prerogative, if the effects of that issue nonetheless impact upon the terms and conditions of employment, the employer must bargain over those *effects. See City of Philadelphia*, 588 A.2d at 72; *County of Bucks v. Pennsylvania Labor Relations Bd.*, 77 Pa.Cmwlth. 259, 465 A.2d 731, 734 (Pa.Cmwlth.1983). However, since we have held that the tracking method does not violate Act 114, this argument likewise must fail.