**PHILADELPHIA FIRE FIGHTERS' UNION, LOCAL 22, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL–CIO**

v.

**CITY OF PHILADELPHIA, Appellant (Two Cases).**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2006.

Decided March 22, 2006.

Ordered Published June 12, 2006.

Jane Lovitch Istvan, Philadelphia, for appellant.

Nancy B.G. Lassen, Philadelphia, for appellee.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

## OPINION BY Judge LEADBETTER.

In these consolidated appeals, the City of Philadelphia (City) appeals from two orders of the Court of Common Pleas of Philadelphia County (common pleas): (1) the order—granting the Philadelphia Fire Fighters Union (Union)[1] petition to vacate an arbitration award, which held that the City did not need to collectively bargain with the Union prior to implementing a plan to reorganize the Philadelphia Fire Department (Redeployment Plan or Plan); and (2) an order denying the City's motion to dissolve the preliminary injunction which was entered prior to arbitration and precluded implementation of the Plan pending the outcome of the arbitration proceedings.[2] After review, we reverse.

As a result of a decrease in the City's Fire Department budget, the City/Fire Department developed the Redeployment Plan, which entailed closing four engine and four ladder companies, and adding eight new medic units. In June 2004, the City informed the Union of its intent to implement the Plan. The Union asked the City to delay implementation of the Plan in order that an agreed-upon third party could review the Plan. The City denied the Union's request, prompting the Union to file a grievance pursuant to the parties' Collective Bargaining Agreement (CBA) as well as an unfair labor practice charge with the Pennsylvania Labor Relations Board (PLRB); both filings contended that the City improperly failed to engage in collective bargaining regarding its Plan. In addition, the Union sought a prelimi-

---

1. Local 22, International Association of Fire Fighters, AFL–CIO.

2. Common pleas' order, granting the petition to vacate the arbitration award, remanded the matter back to the arbitrator to issue an award on the merits of the grievance. Since common pleas remanded the matter back to the arbitrator, that order was interlocutory and, therefore, an immediate appeal could not be taken therefrom as of right. Consequently, the City requested that common pleas certify the order for appeal pursuant to 42 Pa.C.S. § 702(b) (interlocutory appeals by permission); common pleas denied that request. The City then sought review of that order, in addition to appealing the two underlying orders (vacation of the award and denial of the motion to dissolve the preliminary injunction). We note that the Union did not file any papers opposing the City's petition for review.

This court granted the City's petition for permission to appeal from common pleas' order vacating the arbitration award. This court further quashed the direct appeal from that order. *Philadelphia Fire Fighters Union, Local 22 v. City of Philadelphia*, Order dated January 12, 2006 (Pa.Cmwlth. Nos. 2268, 2271 and 2508 C.D.2005). *See also* Note to Pa. R.A.P. 1311 (noting that where lower court refuses to amend its order to include prescribed statement from Rule 702(b), "a petition for review under Chapter 15 [of the Rules of Appellate Procedure] of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal"). Thus, the appeal from the vacation of the arbitration award is properly before this court.

nary injunction to enjoin the City from implementing its Plan prior to engaging in collective bargaining. After a hearing, common pleas concluded that the Plan violated the parties' CBA and Act 111[3] and that the Union members would suffer immediate and irreparable harm if a preliminary injunction was not granted. Accordingly, common pleas ordered, in pertinent part:

> [The City is] hereby enjoined from implementing its July 1, 2004 company-closure plan, including but not limited to the closure of any engine or ladder company, pending the outcome of grievance and arbitration proceedings pursuant to the [CBA between the parties], and related administrative proceedings before the [PLRB].

Common pleas' order of July 14, 2004.

An arbitration then followed, with the issue before the arbitrator stated as follows: "Did the parties' [CBA], and or controlling case law, require the City to bargain with the Union over the health and safety affects [sic], if any, of its plan to close eight [fire companies] and add eight new [medic units]; if so, did the City meet that obligation, and if not, what shall the remedy be?" Arbitrator's decision and award at 1 (Award) (dated April 6, 2005), R.R. at 10a. Extensive testimony was presented before the arbitrator regarding the budget cuts, the basis for the Plan, the studies undertaken in arriving at the final Plan and the Union's concerns regarding the Plan's impact on members' health and safety.[4] The arbitrator noted that the applicable CBA provided in pertinent part:

> The City, consistent with its sound discretion, possesses the right, in accordance with applicable laws, to manage all operations, including, but not limited to, the direction of the work force and the right to plan, direct and control the operation of all equipment and other property of the City, except as modified by this Award and those provisions of the [CBA] which are not inconsistent with or contrary to the exercise of such discretion.

> Matters of inherent managerial policy are reserved exclusively to the City. Except as specifically addressed in this Award and the agreement, matters of inherent managerial policy include, but are not limited to, such areas of discretion or policy as the mission and objective of the Fire Department, the standards of service, the overall budget and the organizational structure of the Fire Department, and the selection and direction of personnel....

Award at 5, R.R. at 15a (emphasis omitted). The arbitrator concluded that the Plan would affect "standards of service" and "organizational structure," both of which are matters of inherent managerial policy. According to the arbitrator, since the Plan was a matter of inherent managerial policy, the City was required to bargain with respect thereto only if the Plan palpably affected bargaining unit health and safety. While the arbitrator did not expressly find that the Plan did not palpably affect bargaining members' health and safety, such a finding is implicit in his adjudication, in that he noted that the record contained evidence supporting the City's contention that the Plan was "safe," and he referred to specific portions of the Fire Commissioner's testimony wherein the Commissioner opined that the Plan

---

3. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. § 217.1–217.10. Act 111 governs collective bargaining between public employers and their police and fire departments.

4. The main concern of the Union appears to be that closure of certain companies will lead to increased response times and work loads, which could jeopardize fire fighter safety.

complied with the National Fire Protection Association's standards, was safe and, in most cases, did not result in increased response times. Citing to several cases of this court, namely, *First Responders*,[5] *City of Scranton*,[6] and *City of Erie*,[7] the arbitrator concluded that the City was not required to bargain over the implementation of the Plan but must bargain over the effects of implementation after it had occurred. Notably, the arbitrator's award directed that the "health and safety impact of the Redeployment Plan shall be an 'Issue in Dispute' during IAFF, Local 22 and the City of Philadelphia's Interest Arbitration, if any, for an Agreement to become effective July 1, 2005." Award at 14.

In early May 2005, the PLRB granted the City's motion to defer to the arbitration award. The PLRB concluded that the award was consistent with both PLRB and Commonwealth Court precedent that held that the City has the managerial right to close fire companies and redistribute its workforce. The PLRB agreed, however, that the City was required to bargain regarding the Plan's impact. The PLRB's order was not appealed.

The Union then filed a petition to vacate the arbitration award, which common pleas granted. In doing so, common pleas opined as follows:

> Among [this court's findings in granting the preliminary injunction] was that the City's failure to bargain prior to implementing the [Plan] represented a clear violation of Act 111, an act for which the Union is entitled to relief. The Court further found that implementation of the closure plan would, "result in severe negative and immediate impact on the rights, health and safety of the City's firefighters and paramedics as well as its citizens." The Court then ordered the parties to arbitrate those grievances, enjoining the company closings until further order of the Court.

> . . . .

> The Court made a discrete finding that the issue of the safety of the firefighters compelled immediate arbitration, but the arbitrator seemingly attempted to overturn this finding and instead decided, despite this Court's order, that arbitration would occur only after implementation of the plan. . . .

> This Court's findings are the "law of the case" and cannot be disturbed by the arbitrator absent a compelling change of circumstances, of which there are none. "Once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted."

Common pleas' memorandum and order dated October 19, 2005, slip op. at 2 (citations omitted). Consequently, common pleas vacated the award and remanded the grievance to the arbitrator for a hearing on the merits.

The City also moved to dissolve the preliminary injunction on the basis that the order's conditions had been satisfied once the arbitration proceedings had concluded. Common pleas denied the motion on the ground that it had vacated the arbitration award and remanded for fur-

---

**5.** *City of Philadelphia v. Pennsylvania Labor Relations Board (First Responders),* 138 Pa. Cmwlth.113, 588 A.2d 67 (1991).

**6.** *International Ass'n of Fire Fighters, Local 669 v. City of Scranton,* 59 Pa.Cmwlth. 235, 429 A.2d 779 (1981).

**7.** *Appeal of City of Erie,* 74 Pa.Cmwlth. 245, 459 A.2d 1320 (1983).

ther proceedings. The present appeals followed.

On appeal, the City argues that common pleas erred in concluding that its adjudication granting a status quo preliminary injunction compelled the arbitrator to conclude that the City, prior to implementing its Redeployment Plan, was required to bargain over its intention to reorganize the Fire Department. Far from establishing a "law of the case," a preliminary injunction is a temporary remedy that cannot serve as a final adjudication of the merits. Further, common pleas' vacation of the arbitration award on such grounds contravenes the narrow certiorari scope of review applicable to Act 111 arbitration awards. The City contends that Act 111 eschews judicial intervention into the arbitration process, permitting it only in the most limited circumstances. Therefore, the City maintains common pleas could not dictate the manner in which the arbitrator should interpret the contract and resolve the parties' grievance.

■■■■ We agree. It is well-established that:

A preliminary injunction is to put and keep matters in the position in which they were before the [alleged] improper conduct of the defendant commenced. The sole object of a preliminary injunction is to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to subvert, but to maintain the existing status until the merits of the controversy can be fully heard and determined. In the hearing upon a preliminary injunction, it is neither necessary nor proper to decide the case as though on final hearing. A preliminary injunction cannot serve as a judgment on the merits since by definition it is a temporary remedy until that time when the party's dispute can be completely resolved.

*Chipman v. Avon Grove Sch., Dist.,* 841 A.2d 1098, 1101 (Pa.Cmwlth.), *appeal denied,* 580 Pa. 716, 862 A.2d 1257 (2004) [citing *Little Britain Twp. Appeal,* 651 A.2d 606 (Pa.Cmwlth.1994)]. Stated more succinctly: " 'The preliminary injunction concludes no rights and is a final adjudication of nothing.' " *Humphreys v. Cain,* 83 Pa.Cmwlth. 176, 477 A.2d 32, 35 (1984) [quoting *Romano v. Loeb,* 326 Pa. 272, 275, 192 A. 100, 102 (1937)]. Therefore, any legal conclusions that common pleas made in the context of granting a preliminary injunction to maintain the status quo could not constitute a final adjudication as to the merits of any issue between the parties.

In addition, common pleas' vacation of the arbitration award violated the permissible scope of review of an Act 111 grievance arbitration award. In *City of Philadelphia v. Fraternal Order of Police,* 564 Pa. 290, 768 A.2d 291 (2001), our Supreme Court reiterated an appellate court's circumscribed review of an Act 111 arbitration award and the reasons therefore:

Act 111 altered the landscape of employer-employee relations. While the legislature maintained the prohibition on striking by police and fire personnel, 43 P.S. § 217.5, it granted to the workers the right to collectively bargain as well as the right to an arbitration of their disputes. These arbitration provisions were one of the key aspects of the legislature's plan to ensure stability within the police and firefighting forces. The legislature designed Act 111 to be swift and final; it allowed judicial intervention in the Act 111 context in only the rarest circumstances. [*Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 656 A.2d 83 (1995)]. The legislature feared that if resolution were to be forestalled by years of litigation, the illegal strikes that had rocked police and firefighting forces

across the Commonwealth in the 1960s could very well reoccur.

Our review therefore is a very constricted one and is in the nature of narrow certiorari. Narrow certiorari allows us to inquire into only four aspects of an Act 111 arbitrator's award: (1) the jurisdiction of the arbitrator; the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) deprivation of constitutional rights. *Betancourt*, 656 A.2d at 85.

*Id.* at 294–95, 768 A.2d at 294. The Court further instructed that:

> We have stated that our definition of what constitutes an excess of an arbitrator's powers is far from expansive. Essentially, if the acts the arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed her authority. Act 111 has defined "terms and conditions of employment" as "including compensation, hours, working conditions, retirement, pensions and other benefits. . . ." 43 P.S. § 217.1. Finally, we have stressed that a mere error of law will not support a finding that the arbitrator exceeded her powers.

*Id.* at 299, 768 A.2d at 296–97 (case citations and quotations omitted).

Thus, while there is no apparent dispute that common pleas had authority to maintain the status quo via the entry of a preliminary injunction, his subsequent review of the arbitration award was confined by the limits of a narrow certiorari review. The Union maintains that in vacating the award, common pleas acted within the confines of the applicable scope of review because: (1) the arbitrator exceeded his authority in essentially directing the City to violate Act 111 (i.e., therefore, an "illegal act") by avoiding its obligation to engage in decisional-bargaining over a matter that impacts fire fighter safety;[8] and (2) the arbitrator improperly delegated the resolution of the issue to an interest arbitration panel in contravention of the goal of final and binding arbitration. In support of its first contention, the Union relies on case law holding that where a matter which normally falls within management discretion is rationally related to employee safety, that matter must be the subject of mandatory bargaining.

As to the first contention, we conclude that this is not reviewable within the confines of narrow certiorari. In *City of Philadelphia*, the number of staff inspectors on the police force had declined because the City had failed to schedule the appropriate promotional examination. Instead, the City was assigning captains to perform the work that had previously been performed by the staff inspectors. The union filed a grievance, requesting that an exam be scheduled immediately. The arbitrator determined that the City's de facto elimination of the rank of staff inspector was a mandatory subject of bargaining because it bore a rational relationship to police duties. In doing so, the arbitrator rejected the City's argument that the management rights clause of the parties' CBA precluded negotiation over the decision to eliminate the position. Accordingly, the arbitrator ordered the City to assign staff

---

8. Section 1 of Act 111 provides that:

Policemen or firemen ... shall, through labor organizations or other representatives ... have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1.

inspector duties to staff inspectors or bargain over elimination of the position.

According to the Supreme Court's opinion on appeal, the City argued that the arbitrator exceeded her authority when she ordered the City to assign such work to staff inspectors or bargain over the decision to eliminate the position. The City argued that:

> [T]he decision to assign work to certain employees or to eliminate a rank are within its managerial prerogative, and that the arbitrator acted in excess of her powers when she issued an award touching in this area.... [T]he arbitrator should have interpreted [the] management rights clause as precluding an arbitration award concerning the City's decision to eliminate the rank of Staff Inspector.

564 Pa. at 299–300, 768 A.2d at 297. The Supreme Court rejected this argument, noting that the arbitrator had not mandated an illegal act and the award concerned terms and conditions of employment. The Court stated in pertinent part:

> [T]he City's argument is not that the award is unrelated to the terms and conditions of employment. Rather, the City is essentially contending that a proper interpretation of the management rights clause of the CBA and related case law should have led the arbitrator to the conclusion that the City has exclusive authority over these particular terms and conditions of employment. In short, the City argues that the arbitrator misinterpreted the management rights clause and misapplied decisional law. Such an argument, though, is not cognizable within the confines of the narrow certiorari scope of review's definition of an excess of the arbitrator's powers as it is, in effect, an argument

that the arbitrator erred as a matter of law.

*Id.* at 300–01, 768 A.2d at 297.

Similarly, the Union, relying on case law interpreting an employer's duty to bargain under Act 111, essentially argues that the arbitrator erred as a matter of law in concluding that the City is not required to engage in pre-implementation bargaining with respect to its decision to close certain fire companies. While this argument is couched as the arbitrator rendered an "illegal" award because it violates the City's Act 111 duty to bargain, the error, if any existed, would be one of law. Accordingly, no relief could be awarded on appeal.

■ Even if such a contention could be addressed under the applicable scope of review, we would still conclude that the arbitrator's decision was correct. In *International Association of Fire Fighters, Local 669 v. City of Scranton*, 59 Pa. Cmwlth. 235, 429 A.2d 779 (1981), an arbitration panel, presumably following interest arbitration, rendered an award mandating that the City of Scranton increase its minimum complement of fire fighters to 225 persons. The City sought to vacate the award, contending that the size of the force is a managerial prerogative and not subject to arbitration as a condition of employment. The union argued, on the other hand, that the number of firemen on the force was a condition of employment, directly related to the safety of the union members. Common pleas vacated the award, concluding that the size of the fire department was outside of the arbitrator's authority. While it is important to note that the proper scope of review was never raised and addressed and, therefore, narrow certiorari was not employed on appeal,[9] this court affirmed, opining in pertinent part:

9. As early as 1969, our Supreme Court held

that narrow certiorari was applicable to the

The bottom line of the instant appeal is whether the court will permit the members of fire and police forces to decide how much of the municipal budget will be spent in the areas of fire and police protection, under the guise of safety considerations. To grant this appeal, and reverse the lower court, we must give the [union] the right to have a major decision-making impact on government spending, budgeting, the level of police and fire protection that the municipality must provide, and even taxation, because salaries for the additional employees must come from public funds. To affirm the award of the arbitrator as being within the scope of arbitrable issues, the court must effectively put [union members] on an equal footing with their employer on a major policy-making question. These people are, after all, employees, not employers.

The courts that have dealt with this issue have drawn a very fine line in distinguishing between the total number of persons on the force (not arbitrable), and the number of persons on duty at a station, or assigned to a piece of equipment, or to be deployed to a fire (all arbitrable because they are rationally related to the safety of the firefighters). However, this Court finds merit in that distinction, because the result still leaves in the municipality the ultimate decision concerning what level of fire protection it wishes, or can afford, to provide to the citizens. If it finds that the arbitrable situations cause an imbalance in certain areas of the force, it retains the authority to decide whether to hire more employees, close stations, revamp the force, or take some other managerial action. Since the method of resolving the imbalance may have far-reaching political and economic implications, especially if taxes must be raised, it should remain within the purview of those who were elected and/or appointed to make such decisions.

429 A.2d at 781. The court in *City of Scranton*, further noted that Section 1 of Act 111, 43 P.S. § 217.1, limits the issues that are subject to mandatory bargaining and that Act 111 "does not remove all regulation [of policemen and firemen] from the scope of a municipality's managerial decision-making, particularly any regulation which might be considered 'essential for the proper and efficient functioning of a police [and fire] force.'" *Id.* [quoting *Sharon v. Rose of Sharon Lodge, No. 3*, 11 Pa.Cmwlth. 277, 315 A.2d 355, 358 (1973)]. Accordingly, this court concluded in *City of Scranton* that Act 111 does not remove from the employer's managerial authority the total number of firemen on a force. *Compare Appeal of City of Erie*, 74 Pa. Cmwlth. 245, 459 A.2d 1320 (1983) (holding that arbitration panel did not err in concluding that the number of firemen per rig constitutes a work condition, rather than a matter of managerial prerogative and, therefore, was a proper subject of bargaining).[10]

Subsequently, in *City of Philadelphia v. Pennsylvania Labor Relations Board (First Responders)*, 138 Pa.Cmwlth.113, 588 A.2d 67 (1991), the City of Philadelphia, during negotiations to form a succes-

---

review of interest arbitration awards. *See Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969). In *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995), the Supreme Court put to rest any confusion regarding the proper scope of review to be applied to Act 111 grievance arbitration awards, concluding that they, too, must be reviewed under the confines of narrow certiorari.

**10.** Again, in *City of Erie*, there is no discussion of the scope of review.

sor CBA, informed the union of its intent to implement a "first responder program," which would assign to certain fire companies the responsibility of responding to medical emergencies. The union then proposed a CBA that would prohibit implementation of the program unless certain issues, such as workload adjustment, training, compensation and staffing requirements, were agreed to. The City did not agree to the proposal and it was not included in the subsequent interest arbitration award. The City also refused the union's request to impact bargain the program prior to its implementation. As a result, the union filed an unfair labor practice charge before the PLRB regarding the City's decision to unilaterally implement the program.

The PLRB applied a rational relationship test[11] and found that the union failed to establish a rational relationship between implementation of the program and fire fighter safety. Accordingly, the PLRB found that the decision to implement the program was a matter of inherent managerial prerogative. The PLRB also affirmed the hearing examiner's determination that the City was obligated to bargain over the wage, hour and working condition impact of the program. On appeal, this court affirmed the PLRB. In doing so, we noted that the PLRB correctly applied the rational relationship test, rejected the union's argument that the program increased the health hazards faced by firemen, and concluded that the City's purpose in imple-

menting the program bore directly on the City's managerial prerogative regarding the level of fire and medical protection, staffing levels, budget and direction of personnel. We also concluded that the PLRB did not err in concluding that the City needed to impact bargain regarding the effects the program had on union members' wages, hours and working conditions: "The *result* of the city's managerial decision to implement the first responder program clearly concerns the aspects of the fire fighters' employment which are expressly outlined in Section 1 of Act 111 as being the subject of collective bargaining."[12] 588 A.2d at 72 (emphasis added).

As the PLRB noted here, these cases support the arbitrator's conclusion that the City's decision to close certain fire companies was a matter of inherent managerial prerogative and not a mandatory subject of bargaining. However, as implementation of the Plan will certainly impact Union members' working conditions, the arbitrator correctly determined that the City is required under Act 111 to bargain over such effects.

■■■■ Next, the Union contends that Section 7 of Act 111,[13] 43 P.S. § 217.7(a), precludes an arbitrator from delegating the resolution of an issue before him to another body. Therefore, the Union maintains that the arbitrator erred in deferring arbitration over the impact of the Plan to an interest arbitration panel rather than deciding the merits himself. The

11. This court has held that under Act 111, a management decision is deemed to be bargainable " 'where it bears a rational relationship to employees' duties.' " *City of Philadelphia,* 588 A.2d at 71 [quoting *City of Clairton v. Pennsylvania Labor Rel. Bd.,* 107 Pa. Cmwlth. 561, 528 A.2d 1048, 1049–50 (1987)].

12. The Union contends that *First Responders* is not controlling because, unlike this case,

there was no evidence of a rational relationship between the employer's plan and fire fighter safety. Here, there was conflicting evidence regarding the safety issue.

13. Section 7 provides that, "[t]he determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved." 43 P.S. § 217.7(a).

Union is correct that Act 111 requires an arbitrator to reach a final, binding determination of the issue in dispute. Section 7 of Act 111; *Dunmore Police Ass'n v. Borough of Dunmore*, 107 Pa.Cmwlth. 306, 528 A.2d 299 (1987). In *Dunmore*, we concluded that the interest arbitration panel erred when, unable to reach a decision as to scheduling matters, it directed the issue to a negotiations committee consisting of representatives of each party and a neutral representative. That is not what occurred in present case, however. The arbitrator concluded that the decision to implement the Plan was not subject to collective bargaining and that impact bargaining was not necessary until after the Plan was implemented and the effects of the Plan known. Accordingly, we conclude that the arbitrator finally decided the issues before him and did not improperly delegate any such issue to another body for resolution.

 Finally, the City contends that common pleas erred in denying its motion to dissolve the preliminary injunction because once the arbitrator and PLRB ruled in the City's favor, the conditions of the preliminary injunction had been met. Our review of a decision continuing a preliminary injunction is limited to determining whether there are any apparent reasonable grounds for common pleas' decision. *County of Butler v. Local 585, Service Employees Internat'l Union*, 158 Pa. Cmwlth. 519, 631 A.2d 1389 (1993). A party seeking dissolution of an preliminary injunction must demonstrate that circumstances have changed since the issuance of the injunction. *Id.* Here, common pleas concluded that the conditions of the injunction had not been met because it vacated the arbitration award and remanded for further proceedings. Since common pleas erred in vacating the award, the conditions

of the injunction have been met and the injunction should be dissolved.

Based upon the foregoing, both orders are reversed.

### *ORDER*

AND NOW, this 22nd day of March, 2006, the orders of the Court of Common Pleas of Philadelphia County in the above-captioned matters are hereby RE-VERSED.