588 A.2d 67

**CITY OF PHILADELPHIA, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

**LOCAL 22, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL–CIO, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided Feb. 20, 1991.

Reargument Denied April 17, 1991.

Petition for Allowance of Appeal Denied Sept. 4, 1991.

114

Steven K. Ludwig, Deputy City Sol., with him, Ralph J. Teti, Chief Deputy City Sol., and Charisse R. Lillie, City Sol., Philadelphia, for petitioner/intervenor, City of Philadelphia.

Stuart W. Davidson, with him, Caren Litvin Sacks, Walters, Willig, Williams & Davidson, Philadelphia, for petitioner/intervenor, Local 22, Intern. Ass'n of Fire Fighters, AFL–CIO.

Peter Lassi, with him, James L. Crawford, Harrisburg, for respondent.

Before PALLADINO, and KELLEY, JJ., and CRUMLISH, Jr., Senior Judge.

KELLEY, Judge.

The City of Philadelphia (city) and Local 22, International Association of Firefighters, AFL–CIO (union), have filed cross-petitions seeking review of a final order of the Pennsylvania Labor Relations Board (PLRB). We affirm the final order of the PLRB in all respects.

The facts in this case, as found by the hearing examiner and adopted by the PLRB, are as follows. The city is an employer within the meaning of the Pennsylvania Labor Relations Act [1] (PLRA) and the Collective Bargaining by

1. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13.

Policemen or Firemen Act[2] (Act 111). The union is a labor organization within the meaning of the PLRA and Act 111 and is the exclusive collective bargaining representative of the city fire fighters.

The city and the union were parties to a collective bargaining agreement that covered the period of July 1, 1986 through June 30, 1988. This agreement was supplemented by an Act 111 interest arbitration award[3] issued October 25, 1988.

Prior to the October 25, 1988 interest arbitration award, the parties entered into negotiations to form a successor collective bargaining agreement. At these negotiations the city advised the union of its intention to implement a first responder program. A first responder program designates certain fire companies which will respond to medical emergencies under certain defined circumstances. However, no specifics for implementation were discussed or outlined.

The union proposed a contract with language prohibiting the implementation of a first responder program unless both parties agreed on such issues as workload adjustment, training, stress management, compensation adjustment and staffing requirements. The city did not agree to the proposed language and such a provision was not awarded by the interest arbitration panel.

However, the union did not withdraw the contract provision regarding the first responder program during the Act 111 interest arbitration proceedings and the interest arbitration award stated that all other demands not addressed by the award were denied.

The city implemented a first responder program on October 31, 1988. The union was officially advised of the implementation of the program approximately five days before its implementation. Upon notification, the union

2. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

3. *See* 43 P.S. §§ 217.4–217.7. Interest arbitration contemplates an inability of the parties to agree on terms of a collective bargaining agreement. *Geriot v. Council of Borough of Darby,* 491 Pa. 63, 69, n. 6, 417 A.2d 1144, 1147, n. 6 (1980).

immediately requested the opportunity to bargain the impact of the program upon the fire fighters. The city responded that the implementation of the program constituted a managerial prerogative and did not bargain the impact of the implementation with the union.

On November 4, 1988, the union filed a charge of unfair labor practices with the PLRB against the city. The charge alleged that the city had engaged in unfair labor practices in violation of the provisions of Section 6(1)(a) and (e)[4] of the PLRA and Act 111[5] by unilaterally implementing a first responder program in the city fire department.

On December 1, 1988, the secretary of the PLRB issued a complaint and notice of hearing assigning a conciliator to the matter. When conciliation did not resolve the dispute, a hearing was held on April 24, 1989 before a hearing examiner.

On November 22, 1989, the hearing examiner issued a proposed decision and order (PDO) in which he determined that the city was not obligated to bargain over the decision to implement the first responder program. The hearing examiner also determined that the city failed to satisfy its obligation to bargain over the impact of the implementation

4. Section 6, Unfair Labor Practices, provides, in part, as follows:
   (1) It shall be an unfair labor practice for an employer—
   (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
   . . . .
   (e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.
   43 P.S. §§ 211.6(1)(a) and (e) (footnotes omitted).

5. Section 1, Right to Bargain, provides:
   Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.
   43 P.S. § 217.1.

of the first responder program. Therefore, the hearing examiner concluded that the city had committed unfair labor practices in violation of Section 6(1)(a) and (e) of the PLRA and Act 111. Both parties filed exceptions to the PDO on December 12, 1989.

On March 6, 1990, the PLRB issued a final order in which it sustained the exceptions of the city and the union to the hearing examiner's reliance on the balancing test set forth in *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975).[6] However, the PLRB affirmed the PDO in all other respects.

The PLRB applied the rational relationship test set forth in *City of Clairton v. Pennsylvania Labor Relations Board*, 107 Pa.Commonwealth Ct. 561, 564, 528 A.2d 1048, 1049–50 (1987) (citing *International Association of Fire-fighters v. City of Scranton*, 59 Pa.Commonwealth Ct. 235, 429 A.2d 779 (1981)) and found that the union failed to establish a rational relationship between implementation of the first responder program and fire fighters safety. Therefore, the PLRB found that the decision to implement the first responder program was a matter of inherent managerial prerogative.

**6.** *Pennsylvania Labor Relations Board v. State College Area School District* set forth a balancing test to be used for deciding whether a particular item is a mandatory subject of bargaining under Section 701 or a managerial prerogative under Section 702 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

The balancing considerations under the Public Employe Relations Act are not pertinent in matters concerning police and fire personnel, who are covered under Act 111. The Public Employe Relations Act specifically excludes policemen and firemen from coverage in section 301 which provides in part:

(2) "Public employe" or "employe" means any individual employed by a public employer but shall not include ... those employes covered under the act of June 24, 1968 (Act No. 111), entitled "An act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes, and requiring compliance with collective bargaining agreements and findings of arbitrators."

43 P.S. § 1101.301(2).

■ The PLRB also dismissed the city's exceptions to the hearing examiner's determination that the city had failed to satisfy its obligation to bargain over the wage, hour, and working condition impact of the decision to implement the first responder program. The city and the union then filed the instant petitions for review which were consolidated by this Court on May 16, 1990.[7]

The union argues that the PLRB committed four errors of law. First, the PLRB erred in failing to hold that the city's unilateral implementation of the first responder program was an unfair labor practice. Second, the PLRB erred in balancing the competing interests of the city and its fire fighters after holding that a balancing test was inappropriate.

Third, even if, *arguendo*, the balancing test is appropriate, the PLRB erred in not recognizing that the fire fighters' concerns outweigh the city's interests. Fourth, the PLRB erred in its determination that the fire fighters' safety concerns were not reasonably related to implementation of the first responder program.

The city argues that the PLRB committed an error of law in finding that the city is required to impact bargain over the implementation of the first responder program in its fire department. The city argues that impact bargaining is inapplicable, as a matter of law, in the Act 111 context.

The city also contends that assuming *arguendo* that the city is required to impact bargain, the city did so during the collective bargaining process leading up to the interest arbitration award on October 25, 1988 and that the union's demand to prohibit the first responder program was rejected by the tripartite Act 111 panel.

7. This Court's scope of review of an adjudication of a statewide administrative agency is limited to determining whether there has been a constitutional violation or an error of law, and whether the findings are supported by substantial evidence on the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa.Commonwealth Ct. 406, 528 A.2d 1024 (1987).

We find that the PLRB did not commit any errors of law. There is no dispute that the PLRB has jurisdiction under the PLRA to decide unfair labor practice charges involving Act 111 employees. *City of Coatesville v. Pennsylvania Labor Relations Board*, 77 Pa.Commonwealth Ct. 265, 465 A.2d 1073 (1983). We note that the PLRB:

> [P]ossesses administrative expertise in the area of public employee labor relations and that great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith.

*Richland School District v. Pennslyvania Labor Relations Board*, 71 Pa.Commonwealth Ct. 45, 53–54, 454 A.2d 649, 652 (1983).

Act 111 does not expressly provide for the reservation of management rights. In cases arising under Act 111 a management decision or "action is deemed bargainable where it bears a rational relationship to employees' duties." *City of Clairton*, 107 Pa.Commonwealth Ct. at 564, 528 A.2d at 1049–50. Both the union and the city argue that the PLRB erroneously applied the balancing test to be used in cases arising under the Public Employe Relations Act set forth in *State College* rather than the appropriate rational relationship test to be used in Act 111 cases. We disagree.

The PLRB sustained the exceptions of the city and the union to the hearing examiner's reliance on *State College* and correctly stated that the appropriate test for deciding the scope of bargaining issues under Act 111 is the rational relationship test. A review of the PLRB's final order shows that the PLRB did indeed apply the rational relationship test in determining that the city's implementation of a first responder program was a managerial prerogative.

Under Section 1 of Act 111 firemen have the right to bargain collectively with their public employers concerning the terms and conditions of employment, which includes

compensation, hours, working conditions, retirement, pensions and other benefits. 43 P.S. § 217.1. This Court has held that "[t]hese are words of limitation defining ... a 'limited category of issues on which the public employer is required to bargain.' " *City of Sharon v. Rose of Sharon Lodge No. 3*, 11 Pa.Commonwealth 277, 283, 315 A.2d 355, 358 (1973).

■ The union argues that the implementation of the first responder program creates new and increased health hazards[8] to the city's fire fighters and that these health hazards are further increased by the city's decision to close fire companies and reduce staffing. We agree with the PLRB that these concerns bear directly on the city's managerial prerogative as to what level of fire and medical emergency protection the city wishes to provide to its citizens, its total staffing levels, its budget, and the selection and direction of personnel.

The hearing examiner and the PLRB both found that:

The City's purpose in implementing the first responder program is to provide a faster response time to medical emergency calls. The number of calls increased from 33,000 in 1973 to 108,000 in 1987. The record supports the City's contention that, absent an increase in rescue units, the first responder program serves to provide an alternative method of improving response time to medical emergencies while enabling the City to act within fiscal constraints. Without an increase in rescue units, the City has demonstrated that the first responder program makes a significant contribution to lower response times. Such lower response times are absolutely critical in saving lives.

The extensive record in this case substantially supports the above findings.

---

**8.** The union states in its brief that the potential hazards in this case include vehicular accidents occasioned by a doubling of fire company runs, increased injuries incurred in fire fighting arising from increased response time to fire, exposure to fatigue and stress occasioned by a dramatic increase in workload, and increased exposure to communicable disease by responding to medical emergencies.

The conclusion in the instant case is the same as the court stated in *City of Scranton:*

> The bottom line of the instant appeal is whether the court will permit the members of fire and police forces to decide how much of the municipal budget will be spent in the areas of fire and police protection, under the guise of safety considerations.  To grant this appeal, ... we must give the public employees' union the right to have a major decision-making impact on government spending, budgeting, the level of police and fire protection that the municipality must provide, and even taxation, because salaries for the additional employees must come from public funds.  To affirm ... the court must effectively put appellees on an equal footing with their employer on a major policy-making question.  These people are, after all, employees, not employers.

*City of Scranton,* 59 Pa.Commonwealth Ct. at 238, 429 A.2d at 781.

Accordingly, the PLRB did not err in finding that the city did not commit an unfair labor practice by unilaterally implementing a first responder program in its fire department.

■ As to the effects of the implementation of the first responder program on the fire fighters' wages, hours and working conditions, we find that the city did have an obligation to impact bargain with the union under Section 1 of Act 111.  The city argues that impact bargaining is inapplicable, as a matter of law, in the Act 111 context because Act 111 does not include a statutory requirement to bargain over impact.

However, Section 1 of Act 111 does grant firemen and policemen the "right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits."  43 P.S. § 217.1.  The result of the city's managerial decision to implement the first responder program clearly concerns the

aspects of the fire fighters' employment which are express-ly outlined in Section 1 of Act 111 as being the subject of collective bargaining.

Furthermore, this Court has held that impact bargaining is applicable in the Act 111 context. In *County of Bucks v. Pennsylvania Labor Relations Board*, 77 Pa.Common-wealth Ct. 259, 465 A.2d 731 (1983), the county argued that the PLRB erred in concluding that the county had failed to bargain over the effects of the termination of its park ranger service. The court in *County of Bucks* rejected this argument and affirmed the PLRB's conclusion that the county refused to bargain over the effects of the termi-nation. *County of Bucks*, 77 Pa.Commonwealth Ct. at 264, 465 A.2d at 734.[9]

■ We also reject the city's contention that it satisfied its obligation to impact bargain during the collective bar-gaining process leading up to the interest arbitration award on October 25, 1988. At the time of the interest arbitration proceedings, the city had not provided the union with any detailed plan on the implementation and the impact of a first responder program. Since the first responder pro-gram was not even implemented until after the interest arbitration award, the impact of such a program could not have been assessed during the proceedings. Therefore, the interest arbitration panel was in no position to resolve the impact issues.

Accordingly, the PLRB did not commit an error of law by finding that the city committed an unfair labor practice by refusing to impact bargain with the union over the imple-mentation of the first responder program in the city's fire department.

Accordingly, the final order of the Pennsylvania Labor Relations Board is affirmed.

9. The PLRB has also directed Act 111 employers to impact bargain in other recent orders. *See City of Easton*, 20 PPER ¶ 20095 (Proposed Decision and Order, 1989); *Perkiomen Township*, 14 ¶ 14259 (Final Order, 1983).

## ORDER

NOW, this 20th day of February, 1991, the final order of the Pennsylvania Labor Relations Board, No. PF–C–88–100–E, dated March 6, 1990, is hereby affirmed.