## DELAWARE COUNTY LODGE NO. 27, FRATERNAL ORDER OF POLICE, Petitioner,

v.

## PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1997.

Decided May 19, 1997.

---

S. Stanton Miller, Jr., Media, for petitioner.

Elizabeth Kelly, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, (P.), J., and LORD, Senior Judge.

COLINS, President Judge.

Presented to the Court is the question whether the Pennsylvania Labor Relations Board (PLRB) erred in dismissing a charge of unfair labor practice brought by the Delaware County Lodge, No. 7, Fraternal Order of Police (FOP) against Haverford Township (Township). Based on our conclusion that the PLRB erred in part, the order of the PLRB is affirmed in part and reversed in part, and remanded to the PLRB for proceedings consistent with this opinion.

On March 15, 1995, the FOP filed with the PLRB a charge that Haverford Township engaged in unfair labor practices contrary to the provisions of Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act [1] and Act 111,[2] by imposing on the bargaining unit a traffic citation issuance quota, as a unilater-

---

1. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1–211.13, provides in relevant part:
   § 211.6  Unfair labor practices
   (1) It shall be an unfair labor practice for an employer—
   (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
   \*  \*  \*  \*  \*  \*
   (e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section (a) of this act.

43 P.S. § 211.6(a), (e).

2. Section 1 of the Act of June 24, 1968, P.L. 237 (known as "Act 111" or "Collective Bargaining by Policemen and Firemen Act"), 43 P.S. § 217.1, states in relevant part:

   Policemen ... employed by a political subdivision of the Commonwealth ... shall have the right to bargain collectively with their public

al term or condition of employment, requiring members of the bargaining unit[3] to engage in prohibited and unlawful conduct in violation of Act 114.[4] The Secretary of the PLRB issued a complaint and the matter was assigned to a conciliator to seek resolution of the dispute. When no resolution of the dispute was reached, a hearing was held.

The hearing examiner found that the Township police department is comprised of 36 officers and eight sergeants. In addition to regular patrol activities, the Township organized a Special Response Team (SRT). The SRT is a highly trained tactical response unit designed for deployment in specialized, life threatening, high risk situations such as barricaded persons, hostage taking incidents and high risk drug warrant searches. The SRT is comprised of thirteen members. Once selected for SRT, the members serve for an indefinite term, and other than overtime pay for call out when not on duty, there is no additional remuneration for SRT members.

The chief of police selects SRT members from a pool of members who volunteer for the SRT. SRT members are selected because they are a "cut above" the average patrolman. (PDO, p. 2.) In order to be selected and remain a member of the SRT, an officer must be above average in productivity as measured by the categories enumerated on the officer monthly activity report. SRT members need to be self-motivated and an officer's productivity is an indicator of self-motivation.

To determine an officer's productivity the Township began tracking departmental activity in 1994. The numbers used in each category came from each officer's daily and weekly activity reports submitted by platoon sergeants to their lieutenant. The categories tracked were:

1. arrests made;
2. traffic citations issued;
3. non-traffic citations issued;
4. motor vehicle written warnings issued;
5. parking tickets issued;
6. vehicle stops made;
7. selective assignments completed;
8. bank checks made;
9. pedestrian investigations completed;
10. vacant house checks made;
11. foot beats walked;
12. incident reports written.

Each officer's activity was averaged per category. That average was the base line used to evaluate each officer's job performance. Job performance was then measured by the number of categories in which an officer's actual number of activities was below, equal to, or above the annual average per officer. Evaluations were based in part on the performance rating, however, an officer did not have to exceed the average in all categories to receive a good evaluation.

The hearing examiner's conclusion that the Township did not establish a quota was based on the following relevant facts: (1) Officers were removed from the SRT because of their overall low productivity on the job and their failure to improve their performance; (2) Officers were removed for a below average

employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits.

3. Bargaining unit is used to encompass all members of Delaware County Lodge No. 7, Fraternal Order of Police.

4. Section 1 of the Act of October 30, 1981, P.L. 321, (known as "Act 114"), 71 P.S. § 2001, provides:
    No political subdivision or agency of the Commonwealth shall have the power or authority to order, mandate, require or in any other manner, directly or indirectly, suggest to any police officer, State Police Officer, game commission officer, fish commission officer or any other officer employed by such political subdivision or agency of the commonwealth that said police officer, State Police Officer, game commission officer, fish commission officer or any other officer shall issue a certain number of traffic citations, tickets or any other type of citation on any daily, weekly, monthly, quarterly or yearly basis.

performance level in addition to prior personnel problems; (3) SRT Officers who were below average in the number of traffic citations issued but above average in other categories remained on the SRT; and (4) the failure of the FOP to introduce any evidence, beyond the subjective belief of some officers, that performance productivity was based on the total number of traffic citations issued.

In a Proposed Decision and Order (PDO) issued October 12, 1995, the hearing examiner dismissed the charge of unfair labor practices and rescinded the complaint thereon. The FOP filed exceptions to the PDO alleging that the hearing examiner erred in failing to find that the Township implemented a traffic citation quota system, in not addressing the issue of whether the implementation of a traffic citation quota system is a statutorily mandated subject of collective bargaining, and, by failing to consider whether the procedure in place violates Act 114. The PLRB dismissed the exceptions and made final the PDO. The FOP filed a petition for review with this Court.

■ When reviewing a PLRB determination, this Court's scope of review is limited to determining whether there was a constitutional violation or an error of law, and whether the PLRB's findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa.Cmwlth. 406, 528 A.2d 1024 (1987). Factual findings supported by substantial evidence [5] are conclusive on appeal; legal conclusions are subject to judicial review. *Pennsylvania v. Pennsylvania Labor Relations Board*, 502 Pa. 7, 463 A.2d 409 (1983).

■ The gravamen of the FOP's first argument is that the Township did in fact implement a quota system.[6] The PLRB pos-

its that whether the Township imposed a quota system was dispositive of the FOP's remaining issues. We agree with the PLRB in part.

The complainant in an unfair labor practice proceeding has the burden of proving each element of its charge by substantial, credible evidence. *St. Joseph's Hospital v. Pennsylvania Labor Relations Board*, 473 Pa. 101, 373 A.2d 1069 (1977). In its charge to the PLRB, the FOP presented evidence that the productivity of the bargaining unit members was measured by a performance standard based upon twelve enumerated factors. One factor was the total number of traffic citations issued. The FOP also introduced evidence that two bargaining unit members were removed from SRT service for failure to meet departmental performance standards. The Hearing Examiner and the PLRB found that the evidence introduced by the FOP, standing alone, was insufficient to support a finding that the Township required the bargaining unit members to meet a quota when issuing traffic citations.

■ In support of its conclusion, the Board noted that the officers testified that they were never directed to meet a certain quota of traffic citations (Notes of Testimony pp. 51, 54). The Officers removed from the SRT unit were removed for overall low performance activity as measured in each of the twelve activities. Officers who were below average in the number of traffic citations issued, but above average in other categories remained in the SRT unit. There is no assertion by the FOP that these findings are not based on substantial evidence; therefore, the findings are conclusive on appeal. *Harbaugh*. Thus, we affirm the PLRB's conclu-

---

5. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pennsylvania v. Pennsylvania Labor Relations Board*, 502 Pa. 7, 463 A.2d 409 (1983).

6. The FOP's first issue on appeal is set forth in Petitioner's Brief on page 10 and states:

The PLRB erroneously concluded that establishment of a performance standard based upon the issuance of a minimum number of traffic citations did not constitute a bargainable term or condition of employment.
After reviewing the brief it is clear that the FOP is challenging the PLRB's decision insofar as the hearing examiner and the PLRB declined to review all charges asserted by the FOP.

sion that the Township did not impose a traffic citation quota system *per se.*

What the PLRB did not consider was the FOP's charge that the system imposed by the Township constituted a performance standard that the Township was statutorily obligated to submit to collective bargaining. The PLRB responds by asserting that evaluating an officer's performance is within the Township's managerial prerogative. While that may be true, the PLRB did not review the issue in the forum below, and cannot render a decision in its appellate brief to this Court. What the PLRB has failed to consider is that regardless of whether the Township imposed a traffic citation quota system *per se,* there remained the question of whether the methodology employed by the Township in evaluating the productivity of its police officers constituted a performance standard. If it did, the PLRB had to determine whether the performance standard was a statutorily mandated subject of collective bargaining. If it was, the PLRB had to determine whether the Township's actions constituted an unfair labor practice. Since the PLRB rendered no decision on this issue, and there is no contention that the issue was not preserved for appellate review, we remand this case to the PLRB for consideration of the issue.

■ The FOP also contends that the PLRB erred in not addressing whether the conduct of the Township in gathering information on the total number of traffic citations issued was in conflict with Act 114. The PLRB argues that it lacks jurisdiction to review this issue. We conclude the PLRB does have jurisdiction.

■ "[A]rbitration under Act 111 has been determined to be an extension of the collective bargaining process." *Pottstown Police Officers' v. Pennsylvania Labor Relations Board,* 160 Pa.Cmwlth. 87, 634 A.2d 711, 713 (1993). "The PLRB has jurisdiction over an unfair labor practice which violates

Section 6(1)(a) and (e) of the PLRA in an Act 111 case." *American Federation of State, County and Municipal Employees, District Council 83, AFL–CIO v. Borough of State College,* 127 Pa.Cmwlth. 71, 560 A.2d 928, 930 (1989) (citing *City of Coatesville v. Pennsylvania Labor Relations Board,* 77 Pa.Cmwlth. 265, 465 A.2d 1073 (1983)). "Section 1 of Act 111 grants police officers 'the right to bargain collectively with their public employers concerning the terms and conditions of employment'." 43 P.S. § 217.1, *City of Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Cmwlth. 113, 588 A.2d 67, 72 (1991), *appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991). Whether the conduct of the public employer implicates Act 114 concerns, in part, the terms and conditions of a police officer's employment. See *South Whitehall Township Police Service v. South Whitehall Township,* 521 Pa. 82, 555 A.2d 793 (1989).[7] "Furthermore, this Court has held that impact bargaining is applicable within the context of an Act 111 case." *Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Cmwlth. 113, 588 A.2d 67, 72 (1991) (citing *County of Bucks v. Pennsylvania Labor Relations Board,* 77 Pa.Cmwlth. 259, 465 A.2d 731 (1983)).

In the case *sub judice,* the result of the Township's decision to track police officer activity impacts on a police officer's terms and conditions of employment, which is outlined in Section 1 of Act 111 as being the subject of collective bargaining. Therefore, on remand, the PLRB must consider whether the Township's method of tracking police officer productivity violates Act 114.

Accordingly, we affirm the PLRB's conclusion that the Township did not implement a traffic citation quota system *per se.* We reverse the PLRB's conclusion that whether there was a traffic citation quota system imposed was the dispositive issue of the case. We remand for a determination of whether the Township's method of tracking police officer productivity constitutes a performance

---

**7.** Holding that a union's collective bargaining representative had standing to bring an equity action against South Whitehall Township for violation of Act 114, the Pennsylvania Supreme Court noted that when "uniformed police do not make the public contacts specified at the monthly rate required, they are exposed to sanctions which can lead to the loss of employment. [Thus], the outcome of the litigation will have an impact upon the conditions of the uniformed officers' employment." *Id.* at 88, 555 A.2d at 796.

standard that is a statutorily mandated subject of collective bargaining; and whether the Township's tracking method violates Act 114.

### ORDER

AND NOW, this 19th day of May 1997, we affirm the order of the Pennsylvania Labor Relations Board insofar as it concludes that Haverford Township did not implement a traffic citation quota system *per se;* we reverse insofar as it concludes that the dispositive issue is whether there was a traffic citation quota system imposed. We remand to the Pennsylvania Labor Relations Board for a determination on whether Haverford Township's method of tracking police officer productivity constitutes a performance standard that is a statutorily mandated subject of collective bargaining and whether Haverford Township's tracking method violates Act 114.

Jurisdiction relinquished.