**CITY OF YORK**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL UNION NO. 627, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided Dec. 29, 2011.

Thomas W. Jennings, Philadelphia, for appellant.

Michael M. Miller, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

International Association of Firefighters, Local Union No. 627 (Union) appeals from the December 3, 2010, order of the Court of Common Pleas of York County (trial court) that granted the City of York's (City) Petition to Vacate Arbitration Award. We reverse and remand.

The Union and the City operated pursuant to a collective bargaining agreement (CBA) encompassing the period from January 1, 2004, to December 31, 2006. Before expiration of that CBA, the parties commenced negotiations for a successor CBA. On May 2, 2006, the Union declared an impasse pursuant to Section 4 of the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. § 217.4 ("Act 111").[1] The parties selected a panel of arbitrators (arbitration panel or Panel), which was scheduled to begin hearings on a successor CBA on October 18, 2006. However, before that date, the City and Union tentatively agreed to the terms of a 2007–2012 CBA. The parties thus cancelled the Panel hearings.

---

1. The statutory procedures governing the collective bargaining process over a successor firefighter contract are set forth in Act 111. Section 4(a) of Act 111 provides in pertinent part:

> (a) If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration.

> For purposes of this section, an impasse or stalemate shall be deemed to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bargaining proceedings have been initiated.
>
> In the case of disputes involving political subdivisions of the Commonwealth, the agreement shall be deemed not approved within the meaning of this section if it is not approved by the appropriate lawmaking body within one month after the agreement is reached by way of collective bargaining.
> 43 P.S. § 217.4(a).

∎ The Union's membership voted to ratify the successor CBA on October 17, 2006. The City and the Union held a joint press conference to announce the agreement. Over the next several weeks, the parties exchanged correspondence concerning the details of the successor CBA's language. The City maintains that the parties produced a final document memorializing the terms of the successor CBA. The Union contends that the negotiations derailed, and the parties never agreed to a final version. In any event, the City became aware on December 5, 2006, that the Union was withdrawing its settlement offer and that it had chosen to proceed to interest arbitration.[2]

Even so, City Council, on December 19, 2006, approved the successor CBA, and the appropriate City officials executed the document. When the City sent the CBA to the Union for signature, the Union refused to execute it. Nonetheless, the City unilaterally implemented the terms and conditions of the successor CBA, effective January 1, 2007.[3]

However, because the Union had declared impasse for a second time, an arbitration panel was selected. The City objected to the Panel's jurisdiction based on its assertion that a successor CBA had already been approved.[4] The Panel held hearings on April 23, October 18, and November 1, 2007. During the hearings, both parties adduced evidence in support of their respective positions, including the City's position that the matter was not arbitrable because the parties had entered into a binding agreement. Thereafter, on September 10, 2009, the parties' neutral arbitrator executed the interest arbitration award (Award). This Award set forth the Panel's jurisdiction as follows:

### I. JURISDICTION

A dispute exists as to whether the parties had reached agreement on the terms of a successor [CBA] prior to the commencement of hearings in this case. The Panel finds that there is not sufficient evidence to determine whether there was an effective meeting of the minds between the City and Union with respect to negotiations preceding the presentation of evidence to this Panel. Accordingly, the Panel determines that no binding contract between the parties hereto occurred.

(Award at 1.)

The City's partial arbitrator, however, dissented to the Award, stating that "this matter is not arbitrable because the 2007–2012 Agreement controls ... and it is, consequently, unnecessary for this Panel to render an opinion as to the terms and conditions of an additional successor agreement." The City's partial arbitrator also specifically objected to the Panel's jurisdiction. (Dissent of Partial Arbitrator at 2–3; R.R. at 160–61.)[5]

The City appealed to the trial court, which, on December 3, 2010, vacated the Award in its entirety. The trial court reasoned:

---

2. "Interest arbitration," as distinguished from "grievance arbitration," is the arbitration that occurs when an employer and an employee are not able to agree on the terms of a CBA. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 70 n. 2, 656 A.2d 83, 85 n. 2 (1995).

3. The Union thereafter filed a charge of unfair labor practices with the Pennsylvania Labor Relations Board.

4. The City filed a petition for injunctive relief, which the trial court denied.

5. Alternatively, the City's partial arbitrator dissented to certain sections of the Award on its merits.

The evidence clearly establishes that on or about October 17, 2006, the parties entered into a preliminary or "tentative" agreement (as [the Union] itself has labeled it), which was approved by the Union and presented to the public at a press conference. However, the parties were in the process of refining the Agreement throughout November 2006, culminating in the written "final" Agreement on November 27, 2006.[6] This then is the date from which the appropriate lawmaking body must approve the Agreement within one month. City Council approved the Agreement on December 19, 2006—within the one-month timeline prescribed by Act 111, 43 § 217.4 [sic]. Therefore, the parties had an enforceable [CBA] covering 2007–2012. As such, [the Union] could not use the provisions of Act 111 in contravention of the terms of the Agreement to convene another arbitration panel. Rather, the Panel was convened improperly and it did not have jurisdiction over this matter. Therefore, any decision by the Panel is a nullity.

Our decision eliminates the need to decide the specific issues raised by [the City] in the alternative.

(Tr. Ct. Op. at 3–4) (footnotes omitted and footnote added). The Union's appeal to this Court followed.

On appeal, the Union argues that the trial court exceeded the limits of the narrow certiorari scope of review because the Court failed to defer to the Panel's finding that there has been no "meeting of the minds" over the terms of a successor CBA. We agree with the Union.

 "The narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 71, 656 A.2d 83, 85 (1995) (footnotes omitted). And, generally,

a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow certiorari, thus allowing for non-deferential review—*unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA.* . . . In other words, *in the absence of the noted caveat, there is no reason in law or logic why a court should defer to the arbitrator on questions of whether jurisdiction existed, whether the proceedings were regular, whether there was an excess in the exercise of the arbitrator's powers, or whether constitutional rights were deprived.*

*Town of McCandless v. McCandless Police Officers Association*, 587 Pa. 525, 540–41, 901 A.2d 991, 1000–01 (2006) (emphasis added) (citation omitted).

 Here, with the Union's assent, the City placed the arbitrability issue squarely before the Panel. (N.T., 4/23/07, at 5; R.R. at 697.) After considering the parties' evidence, the Panel specifically found it had jurisdiction to decide the matter because "no binding contract between the parties hereto occurred." (Award at 1.) Under *McCandless*, where the Panel's determination of its jurisdiction was based on the Panel's own arbitral fact-finding, the Panel's determination is entitled to substantial deference by the Courts. Moreover, in such a case, the Courts "are

---

**6.** We note that, at oral argument, the parties were unable to point to any evidence in the record establishing a final agreement as of November 27, 2006.

bound by the [Panel's] determination ... even though we may find [the Panel] to be incorrect." *Pennsylvania State Police v. Pennsylvania State Troopers Association,* 840 A.2d 1059, 1062 (Pa.Cmwlth.2004).[7] Therefore, we hold that the trial court erred in vacating the arbitration award based on its own finding that the parties had an enforceable successor agreement precluding the Panel's jurisdiction and consequent entry of that award.

Accordingly, we reverse the trial court's order and remand this case to the trial court for a decision on the remaining issues originally presented to it by the City in its appeal from the arbitration award.

### ORDER

AND NOW, this 29th day of December, 2011, the order of the Court of Common Pleas of York County (trial court), dated December 3, 2010, is hereby reversed, and the case is remanded to the trial court for a decision on the remaining issues originally presented to it by the City of York in its appeal from the arbitration award.

Jurisdiction relinquished.

---

**7.** Even if we could have found otherwise, we would not say the Panel's factual finding was error. Although the parties do not dispute that they entered into a *tentative* agreement on October 17, 2006, there is evidence that the parties never arrived at a *final* agreement. (N.T., 11/1/07, at 202, 203–04; R.R. at 1249, 1250–51.) And while the City introduced a November 28, 2006, e-mail from the City's business manager to the Union's president, which indicated that the business manager *believed* he had implemented all of the necessary changes to the successor CBA, the draft

attached to the e-mail was not in final form. (*See* City's Ex. 11; *see also N.T.,* 11/1/07, at 202; R.R. at 1249.) Moreover, the evidence shows that the Union withdrew its agreement *before* the City sought approval of the successor CBA from City Council in accordance with Section 4(a) of Act 111. (N.T., 10/18/07, at 50–51; R.R. at 898–99.) Therefore, the Panel's finding that no binding contract of the parties occurred, thus allowing for the jurisdiction of the arbitrators, is supported by the record.