County of Lancaster, Pennsylvania, : 
                Appellant : 
                 : 
           v. : 
                 :   No. 851 C.D. 2025 
AFSCME District Council 89 :   Argued: February 3, 2026 


BEFORE:   HONORABLE ANNE E. COVEY, Judge 
              HONORABLE STACY WALLACE, Judge 
              HONORABLE MATTHEW S. WOLF, Judge 

OPINION BY 
JUDGE COVEY                       FILED: March 4, 2026 


       The County of Lancaster (County), Pennsylvania, appeals from the County Common Pleas Court's (trial court) June 23, 2025 order (entered June 24, 2025) denying AFSCME District Council 89's (Union) Petition (Petition) to Vacate Arbitration Award (Award). The County presents three issues for this Court's review: whether the trial court erred as a matter of law by: (1) finding that the labor arbitration panel had jurisdiction to issue the Award; (2) finding that an employer must engage in impact bargaining when there are unforeseen or unusual circumstances affecting working conditions; and (3) finding that the temperatures at the prison were unforeseen or unusual circumstances triggering impact bargaining.[1]


## Background

       The Union represents approximately 257 correctional officers (COs) who work at the County Prison (Prison). The Prison was originally built in 1851. While some renovations were made in the 1970s and an addition was built in 1992, there remain Prison sections that have no air conditioning. At the end of 2022, the

---

[1] This Court has reordered the issues for ease of discussion.

collective bargaining agreement (CBA) between the County and the Union expired. The County and the Union engaged in negotiations and reached an agreement on a successor CBA in January 2023. In the summer of 2023, the lack of air conditioning and the heat resulted in inmates contacting the County newspaper to report the conditions.[2]

In June 2023, the Union and the County entered into discussions regarding the working conditions in the Prison due to the heat. On August 25, 2023, the parties met and discussed the heat in the Prison. The Union and the County each picked a representative to participate in the discussions. The emails exchanged between the representatives referenced impact bargaining.[3] However, impact bargaining refers to bargaining **that follows from a managerial decision** having an impact on the terms and conditions of employment. *See City of Phila. v. Pa. Lab.*

---

[2] In addition, there was an outbreak of Legionnaire's disease which resulted in both inmates and employees not having access to water inside the Prison during the time that sanitizing measures were taken.

[3] Section 702 of the Public Employe Relations Act, commonly referred to as Act 195, provides:

> Public employers shall not be required to bargain over matters of **inherent managerial policy**, **which shall include** but shall not be limited to such areas of discretion or policy as **the functions and programs of the public employer**, **standards of services**, **its overall budget**, **utilization of technology**, **the organizational structure**[,] **and selection and direction of personnel**. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours[,] and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.702 (emphasis added). The fluctuation of temperatures at the Prison does not fall within the County's matters of inherent managerial policy.

*Rels. Bd.*, 588 A.2d 67 (Pa. Cmwlth. 1991). Here, there was no such managerial decision.[4]

On October 6, 2023, the County agreed to the Union's following suggestions to deal with the heat in the prison: (1) the County would provide to each bargaining member: five moisture wicking t-shirts, five long sleeve shirts, two hats (the employee will have the option of selecting a baseball-type hat or knit hat, or a combination of both); (2) during the summer months, a program was put in place by which lockdowns were no longer an authorized sanction for inmate misconduct (instead, COs were to utilize other sanction methods in an effort to curb misconduct, e.g., commissary restrictions, cleaning details, etc. - this restriction was lifted on September 1, 2023), in an effort to develop a more uniform methodology, the County would commit to meet with the Union and discuss a plan for implementation the following summer; (3) the County also provided the following to Prison staff during the summer of 2023 and would continue to do so during warm weather events: Gatorade, fans, an auxiliary officer scheduled for the purpose of offering cold drinks,

---

[4] The Dissent maintains that because the Panel also referred to impact bargaining, that it had made a finding relative to jurisdiction. However, the Panel expressly stated that the parties engaged in impact bargaining "as to this issue[,]" specifically referencing "the temperature fluctuations for all employees within the [Prison][,]" not as a result of a managerial decision, as the Dissent contends. Reproduced Record at 65a. The Panel did not address *jurisdiction* anywhere in its decision or Award. In order to trigger impact bargaining, four elements are necessary: (1) the employer must lawfully exercise its managerial prerogative; (2) there must be a demonstrable impact on wages, hours, or working conditions, matters that are severable from a managerial decision; (3) the union must demand to negotiate these matters following management's implementation of its prerogative; and (4) the public employer must refuse the union's demand. *See Lackawanna Cnty. Detectives' Ass'n v. Pa. Lab. Rels. Bd.*, 762 A.2d 792 (Pa. Cmwlth. 2000); *see also City of Phila. v. Pa. Lab. Rels. Bd.*, 588 A.2d 67 (Pa. Cmwlth. 1991) (the city had an obligation to impact bargain where the implementation of the first responder program effected the firefighters' wages, hours and working conditions). Here, there was no managerial decision impacting the employees' wages, hours, or working conditions. Rather, the County and the Union were discussing the working conditions in the Prison due to the summer heat and offering possible suggestions to deal with the heat.

permitted approved t-shirts, and an ice machine.[5] *See* Reproduced Record (R.R.) at 150a-152a.

On November 17, 2023, the Union wrote to the County stating: "This is to advise you that [the Union] is submitting this dispute to a panel of arbitrators [(Panel)] as provided in Section 805 of the Public [E]mploye Relations Act [(]PERA[), commonly referred to as Act 195]."[6] R.R. at 115a. On June 18, 2024, the Panel held a hearing. On September 12, 2024, the Panel issued the Award in favor of the Union. Specifically, the Award continued the previously agreed-to suggestions discussed above, and added the following measures for bargaining unit employees employed at the Prison from May 1st until September 30th (Summer) of each year, or until such time as the employees are relocated to the new Prison facility:

> a. Effective as of the date of this Award, if the need to mandate [sic] an employee arises, the employee shall be

---

[5] The County rejected the Union's following suggestions: (1) double time for all hours worked when the outside temperature is over 80 degrees or under 50 degrees, retroactive to June 1, 2023; and (2) two exhaustion days per year, over and above other types of leave. The County countered by recommending existing personal leave requirement modifications. Currently, requests for personal leave usage must be made no more than 10 days and no less than 3 days in advance of the intended time off. The County offered to reduce the notice requirement for 2 of those days (or 16 hours) per year to no more than 10 days and no less than 24 hours in advance of the intended time off. Requests for personal leave using this shortened period would be designated as weather conditions relief days. This modification to personal leave usage requests would remain in place until such time as the COs are performing their duties in a climate-controlled facility. From Memorial Day to Labor Day up to two COs will be permitted to be off for personal leave per shift, per calendar day, provided that at least one of the COs is using a weather conditions relief day. Depending upon the weather before Memorial Day and/or after Labor Day, the Warden may expand this time period. She would provide notice as soon as practicable if doing so. Outside of that period (unless expanded by the Warden), in an effort to avoid unnecessary mandated or scheduled overtime to backfill shifts, CBA Article 13, Section 6 would apply, and only one person per shift would be permitted to use personal leave, even if it is a weather conditions relief day. The Union rejected the County's suggestions.

[6] 43 P.S. § 1101.805 (relating to binding arbitration for guards).

4

paid in accordance with the [CBA] and, in addition, will be provided with eight (8) hours of compensatory time.

b. The compensatory time earned during this timeframe may be used for any reason; provided, however, the employee shall provide the County with at least 24 hours' notice prior to utilizing the compensatory leave.

c. Any compensatory time earned pursuant to Paragraph 2(a) that remains unused as of September 30th of the year in which it was earned, shall be paid out at the appropriate rate.

d. For the period covering the Summer of 2023 and Summer of 2024 (through the date of the Award), retroactive compensatory leave shall be awarded as follows:

    i. Any bargaining unit member employed at the Prison as of the date of the Award shall receive 30 hours of compensatory leave;

    ii. Any bargaining unit member employed at the Prison who was hired as of September 30, 2023, and remains employed at the Prison as of the date of the Award, shall receive an additional 30 hours of compensatory leave;

    iii. The compensatory time awarded as part of this Subsection (d) may be used for any reason; provided, however, the employee shall provide the County with at least 24 hours' notice prior to utilizing the compensatory leave[;]

    iv. Compensatory leave awarded by the within Subsection (d) must be utilized no later than May 1, 2025, at which time it will be paid out at the appropriate rate.

R.R. at 66a-67a.[7]  On October 11, 2024, the County filed the Petition in the trial court.  On June 23, 2025, the trial court denied the Petition.  The County appealed to this Court.

_____

[7] Arbitrator Gedd Edward Schweikert, IV, wrote a partial Dissent, stating:

5

**Discussion**

Initially, this Court has explained:

> Interest arbitration awards issued pursuant to Act 195 . . . are subject to review under the narrow *certiorari* standard. *See Fraternal Order of Police, Lodge No. 5 v. City of Phila*[.], 725 A.2d 206 (Pa. Cmwlth. 1999). Courts reviewing Act 195 interest arbitration awards are confined to the following areas: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights.

*Cnty. of Berks v. Teamsters Local 429*, 305 A.3d 1243, 1251-52 (Pa. Cmwlth. 2023) (footnote omitted).

> [A] plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow certiorari, thus allowing for non-deferential review - *unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA. . . .* In other words, *in the absence of the noted caveat*, there is no reason in law or logic why a court should defer to the arbitrator on questions of whether jurisdiction existed, whether the proceedings were regular, whether there was an excess in the exercise of the arbitrator's powers, or whether constitutional rights were deprived.

---

I am compelled to issue a partial dissent to this Award because I am of the opinion that applying the terms of this Award to May and September is too broad. Limiting the applicability of the Award to June through August would have been more appropriate. In addition, as the goal of the Award is to provide additional relief time, it is my opinion that the award of additional compensatory relief leave should have been prospective only, not retroactive.

R.R. at 69a.

*City of York v. Int'l Ass'n of Firefighters, Local Union No. 627*, 35 A.3d 822, 825 (Pa. Cmwlth. 2011) (quoting *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 1000-01 (Pa. 2006) (emphasis added; citation omitted)).

The County argues that the Panel did not have jurisdiction to issue the Award. Specifically, the County contends that, under Section 805 of PERA, an interest arbitration panel only has jurisdiction if there is an impasse in collective bargaining; if there is no impasse, then PERA does not bestow jurisdiction upon an arbitration panel. The County further asserts that it had no duty to engage in impact bargaining since it had not made any managerial decisions regarding the working conditions in the Prison due to the heat; thus, because it had no duty to engage in impact bargaining, there could be no impasse in collective bargaining that granted the arbitration panel jurisdiction under PERA.

The Union rejoins that it is the County's own legal error upon which the County contends it is entitled to have the Award vacated on appeal - it ostensibly erred by engaging in bargaining and proceeding to interest arbitration although it now maintains it had no legal obligation to do so. The Union further retorts that the County waived its right to argue that the Panel exceeded its powers by not raising any purported legal issues to the Panel in the first instance. The Union insists that even if it had not waived this argument, the Panel did not exceed its authority or power in any respect.

Preliminarily, "[t]he parties' good-faith negotiations . . . are irrelevant to the issue of the [] [P]anel's subject matter jurisdiction. It is well established that '[t]he issue of subject matter jurisdiction cannot be waived and may be raised at any time by the parties or by the court *sua sponte*.'" *Borough of Gettysburg v. Teamsters Local No. 776*, 103 A.3d 389, 397 (Pa. Cmwlth. 2014) (citation omitted) (quoting *Hous. Auth. of Pittsburgh v. Van Osdol*, 40 A.3d 209, 213 (Pa. Cmwlth. 2012)).

Accordingly, because the County could not waive the jurisdiction issue, this Court will address that claim herein.

In *City of York*, the City of York (City) raised a similar issue as to whether the arbitration panel had jurisdiction to hear the dispute because there was no impasse in collective bargaining. Specifically, the City argued therein that there was an enforceable CBA and therefore there was no impasse; thus, the arbitration panel was convened improperly, and it did not have jurisdiction over the matter.

Unlike the current case, however, the jurisdiction issue was raised before the arbitration panel. The *City of York* Court concluded:

> Here, with the [u]nion's assent, the City placed the arbitrability issue squarely before the [arbitration p]anel. After considering the parties' evidence, the [arbitration p]anel specifically found it had jurisdiction to decide the matter because "no binding contract between the parties hereto occurred." Under *McCandless*, where the [arbitration p]anel's determination of its jurisdiction was based on the [arbitration p]anel's own arbitral fact-finding, the [arbitration p]anel's determination is entitled to substantial deference by the [c]ourts. Moreover, in such a case, the [c]ourts "are bound by the [arbitration panel's] determination . . . even though [this Court] may find [the arbitration panel] to be incorrect." [*Pa.*] *State Police v.* [*Pa.*] *State Troopers Ass*[*'n*], 840 A.2d 1059, 1062 (Pa. Cmwlth. 2004).

*City of York*, 35 A.3d at 825-26 (internal record citations omitted). Accordingly, the *City of York* Court reversed the trial court's order vacating the arbitrator's award for lack of jurisdiction.[8]

This Court has explained:

> Subject matter jurisdiction is "a prerequisite to the exercise of the power to decide a controversy." *Pickford v. Pub. Util. Comm'n*, 4 A.3d 707, 713 (Pa. Cmwlth.

---

[8] Here, because it is undisputed that the parties did not raise the jurisdiction issue before the Panel, no deference was due to the Panel's decision.

8

2010). The inquiry posed by the jurisdiction prong of narrow certiorari is whether an arbitration panel "act[ed] in that general class of controversies that the law empowers it to consider." [*City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d [555,] 564 [(Pa. 2010)] . . . . To determine whether an arbitration panel had subject matter jurisdiction to render an award, the court looks to the Pennsylvania Constitution and the enabling statute, Act [195], that created an arbitration panel. [*Id*].

Article 3, [s]ection 31 of the Pennsylvania Constitution, P[A]. C[ONST.] art. III, § 31, authorizes the General Assembly to "enact laws which provide that the findings of panels or commissions, selected and acting *in accordance with law* for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties. . . ." [Emphasis added.] The phrase "in accordance with law" in [a]rticle 3, [s]ection 31 [of the Pennsylvania Constitution] "means that the arbitrators, in conducting their hearings and making an award . . . must adhere to the mandates of the enabling legislation." *City of Wash*[.] *v. Police Dep't of Wash*[.], . . . 259 A.2d 437, 442 ([Pa.] 1969).

*Borough of Gettysburg v. Teamsters Local No. 776*, 103 A.3d 389, 395 (Pa. Cmwlth. 2014).

Here, the Panel was convened pursuant to Section 805 of PERA, which provides:

Notwithstanding any other provisions of [PERA] where **representatives** of units of guards at prisons . . . **have reached an impasse in collective bargaining** and mediation as required in [S]ection 801 of [PERA, 43 P.S. § 1101.801,] has not resolved the dispute, **the impasse shall be submitted to a panel of arbitrators** whose decision shall be final and binding upon both parties . . . .

43 P.S. § 1101.805 (emphasis added).

9

It is undisputed that the parties were not in the process of collective bargaining at the time the Panel was convened, as the County and the Union had reached an agreement on a CBA in January 2023; thus, there was not and could not have been an impasse in collective bargaining. Further, since the County did not make any managerial decisions regarding the heat-related working conditions in the Prison, there was not and could not be an impact on the terms and conditions of employment. Therefore, because the parties had an enforceable CBA as of January 2023, the Union could not rely upon Section 805 of PERA to convene an arbitration panel. Accordingly, the Panel was convened improperly, and it did not have jurisdiction over this matter.[9]

## Conclusion

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

Judge Dumas did not participate in the decision in this matter.

---

[9] The Dissent proffers that it is offensive to due process to allow the County to undo the proceedings below on jurisdictional grounds and that it will discourage employees from trusting an employer that is apparently willing to negotiate and arbitrate in good faith and be bound by the result, because the County presented the jurisdictional issue after it lost at arbitration. However, either an arbitration panel has jurisdiction or it does not. The parties' and or the Panel's presumably mistaken belief that the Panel had jurisdiction does not alleviate the inherent lack of jurisdiction in the first instance. "Nor may the parties confer subject matter jurisdiction on a . . . tribunal by agreement or stipulation." *Pennsylvanians for Union Reform v. Ctr. Cnty. Dist. Atty's Off.*, 139 A.3d 354, 356 (Pa. Cmwlth. 2016). Accordingly, this Court is constrained to reverse the trial court's order denying the County's Petition.

Given this Court's disposition of the first issue, the remaining issues are moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Lancaster, Pennsylvania, : 
                Appellant : 
                  : 
        v. : 
                  :   No. 851 C.D. 2025
AFSCME District Council 89 : 

## O R D E R

AND NOW, this 4th day of March, 2026, the Lancaster County Common Pleas Court's June 23, 2025 order (entered June 24, 2025) is reversed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Lancaster, Pennsylvania,     :
                          Appellant    :
                                  :
            v.                  :    No.  851 C.D. 2025
                                  :
AFSCME District Council 89        :    Argued:  February 3, 2026

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

DISSENTING OPINION BY
JUDGE WOLF                               FILED:  March 4, 2026

I respectfully dissent because, contrary to the learned Majority, I believe the arbitration panel had jurisdiction to enter an award. Under the Public Employe Relations Act (PERA),[1] the existence of a collective bargaining agreement (CBA) does not preclude further bargaining. Here, and as found by the arbitration panel below, the County of Lancaster (County) was required by PERA to engage in impact bargaining with the union regarding the heat-related working conditions in the prison, they in fact engaged in impact bargaining, and they reached an impasse. That course of events vested jurisdiction in the arbitration panel under PERA. I would affirm the trial court's order upholding the arbitration award.

I agree with the Majority that this is a narrow *certiorari* scope of review matter with our Court. *Cnty. of Lancaster v. AFSCME Dist. Council 89* (Pa. Cmwlth., No. 851 C.D. 2025, filed March 4, 2026), slip op. at 6-7. As the Majority

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101 - 1101.2301.

notes, when reviewing whether the arbitration panel had jurisdiction, we defer to the arbitration panel's factfinding if "that preliminary determination [i.e., jurisdiction] itself depended to some extent upon arbitral fact[]finding." *Id.* (quoting *City of York v. Int'l Ass'n of Firefighters, Local Union No. 627*, 35 A.3d 822, 825 (Pa. Cmwlth. 2011)).

The record shows the arbitration panel found facts to establish its jurisdiction. This dispute arose from uninhabitability and dangerous work conditions in the overly-hot-and-humid, ancient County prison, which caused a widely reported Legionnaire's disease outbreak in the summer of 2023. *See* R.R. 148a-98a (evidence submitted to arbitration panel). This was after the parties had formed a new CBA in January 2023. The arbitration panel found as fact: "Prior to the [arbitration] hearing, the parties engaged in impact bargaining as to this issue but were unable to reach resolution. The [C]ounty offered potential resolutions, some of which were implemented prior to the arbitration and remain currently in effect." *Id.* at 65a.

The Majority states:

> It is undisputed that the parties were not in the process of collective bargaining at the time the Panel was convened, as the County and the Union had reached an agreement on a CBA in January 2023; thus, there was not and could not have been an impasse in collective bargaining. Further, since the County did not make any managerial decisions regarding the heat-related working conditions in the Prison, there was not and could not be impact on the terms and conditions of employment."

*Cnty. of Lancaster*, slip op. at 10. I respectfully disagree for two reasons.

First, the Majority ignores the matter of fact, as found by the arbitration panel, that the parties actually engaged in impact bargaining, i.e., that a managerial

MSW-2

decision had impacted the workforce which gave rise to a right and duty to negotiate. The Majority's statement that no managerial decision occurred belies the record, which shows managerial decisions made in response to heat concerns (agreement to give employees 5 moisture wicking t-shirts; 5 long sleeve shirts; 2 hats; a cooler stocked with Gatorade, Powerade, and water; hallway and individual fans; ice machines; and use of fire exhaust system for improvised ventilation). *See* R.R. at 66a (listing resolutions to heat concerns implemented by the County and ordered to remain in place). The managerial decision here was to not fully address the uninhabitability and dangerous work conditions in the prison which led to a disease outbreak and obviously affects working conditions. The Union pressed the issue and during negotiations the parties' sophisticated counsel expressly called these negotiations "impact bargaining." *See* R.R. 150a-53a (emails from counsel). That "impact bargaining" reached an impasse. That gave the arbitration panel jurisdiction under Section 805 of PERA, 43 P.S. § 1101.805 ("[W]here representatives of units of guards . . . have reached an impasse in collective bargaining . . . , the impasse shall be submitted to a panel of arbitrators . . . .").

The Majority says no collective bargaining could happen here because a CBA was already in place. "Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, *or* the negotiation of an agreement . . . ." Section 701 of PERA, 43 P.S. § 1101.701 (emphasis added). So, under PERA, collective bargaining *includes* impact bargaining. *See* County's Br. at 13 ("The second category of collective bargaining is called impact bargaining.").

"When a managerial decision has an impact on the terms and conditions

MSW-3

of employment, the parties are required [under Section 702 of PERA[2]] to engage in impact bargaining." *Pa. State Sys. of Higher Educ. v. Pa. Lab. Rels. Bd.*, (Pa. Cmwlth., No. 2159 C.D. 2011, filed Aug. 15, 2012), slip op. at 11, 20122012 WL 3860033, *appeal denied*, 69 A.3d 604 (Pa. 2013).[3] "Bargaining to impasse, of course, is the prerequisite to the initiation of interest arbitration." *Michael G. Lutz Lodge No. 5, of Fraternal Ord. of Police v. City of Phila.*, 129 A.3d 1221, 1230 (Pa. 2015). Based on the statute and precedent, I agree with the County's statement of the law: "If the parties engage in impact bargaining but reach an impasse in attempting to mitigate the negative impacts that flow from the employer's decision, correctional officers have the same right to engage in the binding interest arbitration under Section 805 of PERA to resolve that impasse." County's Br. at 15. The Majority's focus on the existence of the CBA does not account for the fact that impact bargaining can occur even when a CBA is in place and did occur here. That gave the panel jurisdiction under Section 805 of PERA.

Second, the Majority's decision presents a due process issue. The County could not lose. The County might have prevailed at arbitration. Instead, it

---

[2] Section 702 states:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

43 P.S. § 1101.702.

[3] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

participated in "impact bargaining" and arbitration without ever raising a jurisdictional objection, and it lost. Then the County injected a jurisdictional argument after the fact in an attempt to void the entire proceedings. To allow that to stand, as the Majority does, violates not only the procedure set out in PERA but also fundamental concepts of fairness.[4] As explained earlier, the facts found below and the law of PERA established the arbitration panel's jurisdiction. Under those circumstances, it is offensive to due process to allow the County to undo the proceedings below on jurisdictional grounds because it dislikes the result. That will discourage employees from trusting an employer that is apparently willing to negotiate and arbitrate in good faith and be bound by the result, which process PERA is meant to encourage. *See Off. of Admin. v. Pa. Lab. Rels. Bd.*, 598 A.2d 1274, 1278 (Pa. 1991) (*Off. of Admin. II*) (noting "the general policy in favor of arbitration" of labor disputes).[5]

---

[4] I fully agree with the Majority that the arbitration panel's jurisdiction is a nonwaivable issue. *See Cnty. of Lancaster*, slip op. at 7-8. We should address the issue, but must do so consistently with the statute and precedent, which requires deference to arbitral facts that determine jurisdiction. *See id.*, slip op at 6 (standard of review).

[5] Related to this point, I do not read the Majority as accepting or addressing the following argument by the County: that "there can be, of course, no impasse in collective bargaining on issues over which the employer is not required to bargain." County's Br. at 23 (quoting *Commonwealth v. Pa. Lab. Rels. Bd.*, 549 A.2d 240, 241 (Pa. Cmwlth. 1988), *rev'd by Off. of Admin. II,* 598 A.2d 1274 (Pa. 1991)); *accord* County's Reply Br. at 4-5. The one Pennsylvania decision the County cites for that proposition was reversed on appeal. *See Off. of Admin II,* 598 A.2d at 1278. I find no other Pennsylvania authority for that proposition. Because I conclude that the parties were required by law to impact bargain in this case, I would not reach the issue of whether the County's apparent voluntary engagement in impact bargaining might result in an impasse that triggers Section 805.

For these reasons, I dissent from the Majority's decision and I would affirm the trial court's order upholding the arbitration panel's award.

_____
MATTHEW S. WOLF, Judge